**In re BRICHARD SECURITIES LITIGATION.**

**This Document Relates to: All Actions.**

**No. C–87–2987 CAL.**

United States District Court, N.D. California.

March 27, 1992.

Frederick P. Furth, Craig C. Corbitt, Furth, Fahrner & Mason, San Francisco, Cal., Michael J. Freed, Stewart M. Weltman, Much, Shelist, Freed, Denenberg, Ament & Eiger, Chicago, Ill., for plaintiffs.

Scott A. Fink, Gibson, Dunn & Crutcher, San Francisco, Cal., for defendant.

## OPINION AND ORDER

LEGGE, District Judge.

On September 13, 1991, this court dismissed, on the ground of the statute of limitations, the § 10(b)-5 claims which plaintiffs had brought against defendant Price Waterhouse & Co. Plaintiffs now bring this motion pursuant to section 27A of the Securities Exchange Act of 1934, asking the court to reinstate those claims. Price Waterhouse opposes this motion on the ground that section 27A violates the constitutional separation of powers between the judicial and legislative branches.

The court considered the moving and opposing papers, the applicable authorities, and the legislative history of section 27A, and held hearings. On February 26, 1992, the court stated its intention to declare section 27A unconstitutional. Notice was given to the United States Attorney General pursuant to 28 U.S.C. 2403(a). The United States and the Securities and Exchange Commission filed a statement of interest and a brief in support of plaintiffs' position, which this court has also considered. This court now enters this opinion and order denying plaintiffs' motion, on the ground that section 27A is unconstitutional.

### I.

This series of cases began in 1987 when plaintiffs filed this suit against a number of defendants for securities fraud. On May 10, 1989 Price Waterhouse moved for dismissal of plaintiffs' § 10(b)-5 claims on the ground that they were untimely. At that time, the statute of limitations for § 10(b)-5 claims was governed by California law. *Stitt v. Williams*, 919 F.2d 516, 522 (9th Cir.1990). This court looked to the California limitations period, found that plaintiffs' claims were timely and denied defendant's motion.

On June 20, 1991, while these cases were pending, the United States Supreme Court announced its decision in *Lampf, Pleva, Lipkind, Prupis & Petigrow v. Gilbertson,* — U.S. ——, 111 S.Ct. 2773, 115 L.Ed.2d 321 (1991). The Court held that § 10(b)-5 claims are to be governed by a three year statute of repose and a one year statute of discovery. The Court then applied these limitations periods to the *Lampf* litigants.

On the same day, the Court decided *James B. Beam Distilling Co. v. Georgia,* — U.S. ——, 111 S.Ct. 2439, 115 L.Ed.2d 481 (1991).[1] The issue before the Court was the retroactive effect of its decision in *Bacchus Imports, Ltd. v. Dias,* 468 U.S. 263, 104 S.Ct. 3049, 82 L.Ed.2d 200 (1984).[2] The *Beam* court noted that a decision announced by a federal court could be applied in three ways: First, "a decision may be made fully retroactive, applying both to the parties before the court and to all others by and against whom claims be pressed, consistent with res judicata and procedural barriers * * * *" *Beam*, 111 S.Ct. at 2443. Second, there is a purely prospective method, "under which a new rule" is applied neither to the parties before the court announcing the decision nor to others similarly situated who stand behind the parties in time. *Id.* Third, a "court may apply a new rule in the case which it is pronounced, then return to the old one with respect to all others arising on facts predating the pronouncement." *Id.* at 2444; this third method the Court called selective prospectivity. The Court determined that selective prospectivity violates Article III of the Constitution.[3] Therefore, the Court held that it is "error to refuse to apply a rule of federal law retroactively [to other similarly situated litigants in pending cases] after the case announcing the rule has already done so." *Id.* at 2446.

On September 13, 1991, this court ruled in these cases that since *Lampf* announced a new federal statute of limitations for § 10(b)-5 actions and applied that decision

---

**1.** A majority of the Court joined in the holding, Justice Souter announcing the judgment of the Court. Four justices wrote separately and no more than three justices joined in any of the four opinions.

**2.** In *Bacchus,* the Supreme Court struck down a state tax statute as unconstitutional on the ground that it violated the Commerce Clause.

**3.** The Court did not expressly decide the issue of pure prospectivity.

to the *Lampf* litigants, *Beam* required that the *Lampf* decision be applied to all private § 10(b)–5 cases pending at the time of the *Lampf* decision, including the cases at hand. Plaintiffs stipulated that if the *Lampf* statute of limitations applied to their claims, all § 10(b)–5 claims against defendant were untimely.

On December 21, 1991, Congress passed and the President signed the Federal Deposit Insurance Corporation Improvement Act of 1991, Pub.L. No. 102–242 § 476, 105 Stat. 2236. Section 476 of the Act amended the Securities Exchange Act of 1934 by adding Section 27A. 15 U.S.C. § 78aa. Section 27A provides:

> Sec. 27A(a) *Effect on Pending Causes of Action.* The limitation period for any private civil action implied under section 10(b) of this Act that was commenced on or before June 19, 1991, shall be the limitation period provided by the laws applicable in the jurisdiction, including principles of retroactivity, as such laws existed on June 19, 1991.
>
> (b) *Effect on Dismissed Cause of Action.* Any private action implied under Section 10(b) of this Act that was commenced on or before June 19, 1991
>
> (1) which was dismissed as time barred subsequent to June 19, 1991, and
>
> (2) which would have been timely filed under the limitations period provided by the laws applicable in the jurisdiction, including principles of retroactivity, as such laws existed on June 19, 1991,
>
> shall be reinstated on motion by the plaintiff not later than 60 days after the date of enactment of this section.

Within sixty days after the enactment of section 27A, plaintiffs filed this motion for reinstatement of their 10(b)–5 claims.

## II.

This court is aware that it must construe section 27A in a way that renders it constitutional if reasonably possible. *Edward J. DeBartolo Corp. v. Florida Gulf Coast Bldg. & Constr. Trades Council,* 485 U.S. 568, 575, 108 S.Ct. 1392, 1397, 99 L.Ed.2d 645 (1988). In determining whether section 27A violates the Constitution, this court is guided by three cannons of statutory interpretation.

■ First, unless the language of the statute "compel[s] an odd" or "absurd" result, the court must look at the plain meaning of the statute. *Green v. Bock Laundry Machine Co.,* 490 U.S. 504, 509, 109 S.Ct. 1981, 1984, 104 L.Ed.2d 557 (1989); *Public Citizen v. United States Dept. of Justice,* 491 U.S. 440, 470–71, 109 S.Ct. 2558, 2574–75, 105 L.Ed.2d 377 (1989) (Kennedy, J., concurring); *Church of the Holy Trinity v. United States,* 143 U.S. 457, 459, 12 S.Ct. 511, 512, 36 L.Ed. 226 (1892).

■ Second, in certain circumstances the court may turn to the legislative history and the circumstances of the enactment. The strict view is that courts may resort to legislative history only when a literal reading of the act compels an "odd" result or when the meaning of the statute is uncertain. *E.g., Public Citizen,* 491 U.S. at 470–71, 109 S.Ct. at 2574–75. When the language of a statute casts doubt on its constitutionality, the court should turn to the legislative history in an attempt to alleviate that doubt. *Barcellos and Wolfsen Inc. v. Westlands Water Dist.,* 899 F.2d 814, 831 (9th Cir.1990) (Fernandez, J., dissenting); *Daylo v. Administrator of Veterans' Affairs,* 501 F.2d 811, 819 (D.C.Cir. 1974). However, recent Supreme Court cases suggest that in all questions of statutory interpretation, a court may examine the legislative history in order to avoid an "unreflective" reading of a statute. *Public Citizen,* 491 U.S. at 453 & n. 9, 109 S.Ct. at 2566 & n. 9.

■ Third, if the "inevitable effect of a statute on its face" is unconstitutional, the legislative purpose or intent is irrelevant. *United States v. O'Brien,* 391 U.S. 367, 384–85, 88 S.Ct. 1673, 1683, 20 L.Ed.2d 672 (1968); *see Lydo Enterprises, Inc. v. City of Las Vegas,* 745 F.2d 1211, 1215 (9th Cir.1984). "There is a basic difference between filling a gap left by Congress' silence and rewriting rules that Congress has affirmatively and specifically enacted." *Mobil Oil Corp. v. Higginbotham,* 436 U.S.

**1102**

618, 625, 98 S.Ct. 2010, 2015, 56 L.Ed.2d 581 (1978). *See also United States v. Locke,* 471 U.S. 84, 95, 105 S.Ct. 1785, 1792, 85 L.Ed.2d 64 (1985); *Richards v. United States,* 369 U.S. 1, 9, 82 S.Ct. 585, 590, 7 L.Ed.2d 492 (1962). Courts are bound to read a statute in a constitutional manner if "fairly possible" and "reasonable." *NLRB v. Catholic Bishop of Chicago,* 440 U.S. 490, 510–11, 99 S.Ct. 1313, 1324, 59 L.Ed.2d 533 (1979) (Brennan J., dissenting); *Pernell v. Southall Realty,* 416 U.S. 363, 365, 94 S.Ct. 1723, 1724, 40 L.Ed.2d 198 (1974). A court, however, cannot "press statutory construction 'to the point of disingenuous evasion' even to avoid a constitutional question." *Locke,* 471 U.S. at 96, 105 S.Ct. at 1793 (quoting *Moore Ice Cream Co. v. Rose,* 289 U.S. 373, 379, 53 S.Ct. 620, 622, 77 L.Ed. 1265 (1933)).

### III.

The basic issue in this motion is whether Congress exceeded its authority under Article I by enacting legislation that intrudes into powers reserved to the judiciary under Article III.

The Supreme Court has acknowledged that Congress is not foreclosed from enacting legislation that affects rights and duties retroactively so long as "the retroactive application of the legislation is itself justified by a rational legislative purpose." *United States v. Sperry Corp.,* 493 U.S. 52, 64, 110 S.Ct. 387, 396, 107 L.Ed.2d 290 (1989). The Court also recognizes that Congress may enact legislation that affects pending cases. *United States v. The Schooner Peggy,* 5 U.S. (1 Cranch) 103, 2 L.Ed. 49 (1801); P. Bator, P. Mishken, D. Shapiro & H. Wechsler, Hart and Wechsler's The Federal Courts and the Federal System 316 n. 4 (2d ed. 1973). *See also National Juvenile Law Center Inc. v. Regnery,* 738 F.2d 455 (D.C.Cir.1984). Both of these principles presuppose a substantive or procedural change in law made by Congress that is *then* applied retroactively. However, Congress may not usurp the judicial responsibility to adjudicate cases. Therefore, Congress may not enact legislation that "prescrib[es] rules of

decision to the Judicial Department of the government in cases pending before it" unless it changes an underlying substantive or procedural law. *United States v. Sioux Nation of Indians,* 448 U.S. 371, 398, 100 S.Ct. 2716, 2735, 65 L.Ed.2d 844 (1980) *United States v. Klein,* 80 U.S. (13 Wall.) 128, 20 L.Ed. 519 (1871); *Seattle Audubon Society v. Robertson,* 914 F.2d 1311, 1315 (9th Cir.1990), *rev'd on other grounds, Robertson v. Seattle Audubon Society,* —— U.S. ——, 112 S.Ct. 1407, 118 L.Ed.2d 73 (1992). Nor may Congress enact a law that reverses or allows for review of a final judgment of either the Supreme Court or the lower federal courts. *Georgia Ass'n of Retarded Citizens v. McDaniel,* 855 F.2d 805, 810 (11th Cir.1988), *cert. denied,* 490 U.S. 1090, 109 S.Ct. 2431, 104 L.Ed.2d 988 (1989). In addition, Congress may not enact a law that effects a substantive or procedural change but otherwise contravenes Article III. *Seattle Audubon Soc. v. Robertson,* 914 F.2d at 1315. For example, Congress may not enact a change in law that upsets the results of the final judgments of the courts. 13 C. Wright, A. Miller & E. Cooper, Federal Practice & Procedure § 3529.1 (1975); *Hayburn's Case,* 2 U.S. (2 Dall.) 408, 1 L.Ed. 436 (1792); *Daylo v. Administrator of Veterans' Affairs,* 501 F.2d 811 (D.C.Cir.1974). Nor may Congress enact a change in law that contradicts a constitutional decision of the Supreme Court. *Marbury v. Madison,* 5 U.S. (1 Cranch) 137, 2 L.Ed. 60 (1803).

The prohibition against allowing Congress to disrupt final decisions of the courts is "consistent with separation of powers" because it "protects judicial action from superior legislative review, a 'regime * * * obviously * * * subversive of the judicial branch of government.'" *Georgia Ass'n of Retarded Citizens,* 855 F.2d at 810. "Judicial jurisdiction implies the power to hear and determine a cause, and inasmuch as the Constitution does not contemplate that there shall be more than one Supreme Court, it is quite clear that Congress cannot subject the judgments of the Supreme Court to the re-examination and revision of any other department of

government." *United States v. O'Grady,* 89 U.S. (22 Wall.) 641, 647–48, 22 L.Ed. 772 (1874); *Georgia Ass'n of Retarded Citizens,* 855 F.2d at 810. Such congressional review would also undermine Article III in that it would transform judgments into advisory opinions and thereby subvert their finality. *Hayburn's Case,* 2 U.S. (2 Dall.) 408 (1792); 13 Wright, Miller & Cooper, *supra* at § 3529.1.

### IV.

■ Having stated these principles, this court emphasizes several important points about section 27A. First, the section did not enact any underlying substantive law. Second, it did not enact a statute of limitations for § 10(b)–5 cases, but left the *Lampf* rule untouched. What section 27A did was to say that the *Lampf* rule should not, contrary to the *Beam* and *Lampf* decisions of the Supreme Court, be applied by the federal courts to existing cases.

As will be discussed, the section violates the constitutional separation of powers. It improperly directs a result in pending cases, and it reverses final judgments of the federal courts. And by changing the constitutional rule announced in *Beam,* it intrudes on the Supreme Court's authority to be the final expounder of the Constitution.

### V.

The subject matter of section 27A is *not* the statute of limitations for § 10(b)–5 actions. Congress did not change the statute of limitations announced in *Lampf.* Congress only changed the *retroactive* effect of the statute of limitations announced in *Lampf. See e.g.,* 137 Cong.Rec. H11,811 (daily ed. Nov. 26, 1991) (letter of Senator Riegle Chairman of Committee on Banking, Housing and urban Affairs to Representative Foley Nov. 25, 1991). Since the retroactive application of the *Lampf* rule is a result of the Court's decision in *Beam,* the

separation of powers analysis requires an inquiry not only into Section 27A's impact on *Lampf,* but also into Section 27A's impact on *Beam.*

■ Whether section 27A violates the constitutional separation of powers depends on the answer to two questions. First, does section 27A's impact on pending litigation stem from a change of the law pronounced in *Lampf* or in *Beam?* The critical distinction is "between the actual repeal or amendment of the law underlying the litigation, which is permissible, and the actual direction of a particular decision in a case, without repealing or amending the law underlying the litigation which is not permissible." *Seattle Audubon Society,* 914 F.2d at 1314–15. Second, independent of that question, is section 27A otherwise constitutional? That is, assuming section 27A does effect a change in law, is that change constitutional? In the Ninth circuit, "the two prong test for unconstitutionality is disjunctive rather than conjunctive." *Id.* However, as will be discussed, section 27A is unconstitutional under either a disjunctive or conjunctive test. It both directs the outcome of a particular group of cases and is otherwise unconstitutional.[4]

### VI.

The court begins by examining the impact of section 27A on *Lampf.* Did section 27A change or modify the statute of limitations rule announced in *Lampf,* or did it attempt to direct the outcome of § 10(b)–5 cases without changing the underlying rule announced in *Lampf?*

### A.

Plaintiffs' construction of section 27A is that it properly altered the statute of limitations period announced in *Lampf.* The language of the statute and its legislative history demonstrate, however, that section 27A did not change the underlying *Lampf*

---

4. Other district courts have divided on the issue of whether section 27A violates the separation of powers required by the Constitution. *Compare Venturtech II v. Deloitte Haskins & Sells,* No. 88–1012–CIV–5–H (E.D.N.C. Feb. 24, 1992); *Ayers v. Sutliffe,* No. c–1–90–650 (S.D. Ohio Feb. 11, 1992); *Bankard v. First Carolina Communications,* 1992 WL 3694 (N.D.Ill. Jan. 6, 1992); *with TGX Corp. v. Gaylon Simmons,* No. 87–5298, 1992 WL 73833 (E.D.La. March 28, 1992); *Mancion v. International Technology Corp.,* No. 89–7244–RMT(SX) (C.D.Cal. March 13, 1992).

rule. The section itself does not codify *Lampf.* Nor does it enact a statute of limitations different from the one announced in *Lampf.* The limitations periods of *Lampf* are impliedly approved by Congress' taking no action to codify or change those rules. Instead, on its face, section 27A only limits the retroactive application of those periods.

The legislative history of section 27A, albeit limited, supports this conclusion. The legislative history leaves no doubt that Congress intended to prevent the retroactive application of *Lampf* without changing the *Lampf* rule itself. Two bills to change the statute of limitations announced in *Lampf* were proposed. Senator Byran and Representative Markey introduced separate bills that would have enacted a limitations period longer than the one-year/three-year rule announced in *Lampf,* and that also would have "eliminate[d] the retroactivity of the *Lampf* decision, allowing suits underway to move forward under the new time limit rule." 137 Cong.Rec. S10,- 675–76, 691–92 (daily ed. July 23, 1991). Neither bill passed. *Id.*[5]

Those who favored and those who opposed changing the *Lampf* rule reached a compromise, whereby it was agreed that the *Lampf* rule would remain intact, but that section 27A would be enacted to limit *Lampf*'s application by creating what one Senator called a "legal reachback." 137 Cong.Rec. S17,306 (daily ed. Nov. 21, 1991). The House Committee on Energy and Commerce and the Senate Committee on Banking, Housing and Urban Affairs worked together over a period of 24 hours to enact this *Lampf* compromise. *See e.g.,* 137 Cong.Rec. H11,806 (daily ed. Nov. 26, 1991).

Section 27A's confinement of *Lampf* did not modify the *Lampf* statute of limitations itself. The next question is whether that confinement of *Lampf* is constitutionally permissible.

## B.

The court looks first at sub-section (a). Section 27A(a) addresses § 10(b) cases that were pending on June 19, 1991, the day before *Lampf,* and that have not been dismissed subsequent to the *Lampf* and *Beam* decisions. The subsection instructs that the limitations periods to be applied are those provided by the laws of the various jurisdictions as they stood on June 19, 1991. It does not allow the *Lampf* decision to be applied to those cases.

On June 19, 1991 the circuits were not in agreement on the limitation periods for private § 10(b)–5 actions. Thus it could be argued that section 27A(a) does not direct the outcome of that specific group of cases. However, section 27A(a) still intrudes on the adjudicative function of the courts. Congress stated what rule may *not* be applied, even though it did not enact a substantive or procedural law.

*United States v. Klein,* 80 U.S. (13 Wall.) 128, 20 L.Ed. 519 (1871) dealt with a congressional enactment forbidding the courts to consider a pardon as evidence of loyalty during the Civil War. *Klein* held that a congressional enactment that proscribed the courts to characterize a fact in a certain way, without changing the law that dictated that conclusion, violated the separation of powers between the judicial and legislative branches—even though the statute allowed for differing final judgments among the courts.

The *Klein* Court held the congressional enactment to be unconstitutional since its "great and controlling purpose" was to prescribe a rule of decision in a case pending before the courts. *Klein,* 80 U.S. (13 Wall.) at 147–48.[6] Under the enactment,

5. Without deciding the question, the court believes that if Congress had enacted a statute of limitations period for private § 10(b)–5 actions and had commanded that the new statute was to apply retroactively, Congress would not have overstepped its legislative power. Section 10(b)–5 claims are statutory and Congress is free to enact any period of limitations it thinks is appropriate. And such legislation could apply retroactively if Congress has a rational purpose in doing so.

6. The enactment also infringed on the constitutional power of the Executive by impairing the effect of a pardon. *Klein,* 80 U.S. (13 Wall.) at 146–47. For this reason the legislation could not be upheld as a redefinition of the consequences of pardon. *Id.*

the courts remained free to consider *other* evidence introduced by claimants. Hence, the enactment in *Klein* was not unconstitutional because it insured a particular final result. Rather, it foreclosed the courts from evaluating one piece of evidence in accordance with the prevailing rule of interpretation. Insofar as the enactment instructed the courts how to evaluate that evidence, it partially invaded the adjudicative function of the courts.

Section 27A is analogous to the enactment at issue in *Klein*. It directs a rule of decision by intruding on the adjudicative process although, like the enactment in *Klein*, it allows for differing final judgments. Section 27A(a), like the enactment in *Klein*, does not compel a specific final judgment. Under section 27A(a) courts are free to apply limitations periods as they existed in the various jurisdictions on June 19, 1991.

Again, like *Klein*, section 27A(a) attempts to control one part of the adjudicative process without making a change in the underlying law. Congress may not direct interim judgments of a court that eventually lead to final judgments. "If the essential, constitutional role of the judiciary is to be maintained, there must be both the appearance and the reality of control by Article III judges over the interpretation, declaration and *application* of federal law." *Pacemaker Diagnostic Clinic, Inc. v. Instromedix Inc.*, 725 F.2d 537, 544 (9th Cir.), *cert. denied* 469 U.S. 824, 105 S.Ct. 100, 83 L.Ed.2d 45 (1984). (emphasis added); *see also Northern Pipeline Construction Co. v. Marathon Pipe Line Co.*, 458 U.S. 50, 76–81, 102 S.Ct. 2858, 2874–76, 73 L.Ed.2d 598 (1982).

Section 27A(a) on its face "lies in the shadow of constitutional doubt," and it is then proper to turn to the legislative history in an effort to avoid finding the statute unconstitutional. *Daylo v. Administrator of Veterans' Affairs*, 501 F.2d 811, 819 (1974). In this case, rather than removing the shadow of unconstitutional doubt, the legislative history darkens it. In interpreting legislative history, "Congress cannot be

presumed to have usurped power constitutionally forbidden to it* * * * " *Walker v. United States Dept. of Housing & Urban Dev.*, 912 F.2d 819 (5th Cir.1990). However when the legislative history "affirmatively" and "clearly" confirms the suspicion of unconstitutionality, the court must acknowledge it. *NLRB v. Catholic Bishop of Chicago*, 440 U.S. 490, 507, 99 S.Ct. 1313, 1322, 59 L.Ed.2d 533 (1979).

The legislative history resonates with a single refrain: Congress was concerned that unless section 27A(a) was enacted, "over $4 billion of fraud claims, including those against Milken, Keating and Fred Carr, are threatened with pending dismissal motions solely as a result of *Lampf*." 137 Cong.Rec. H11,812 (daily ed. Nov. 26, 1991) (extended remarks of Representative Markey).[7] Representative Markey's remarks reflect the concerns of the two committees that drafted section 27A. The possible dismissal of actions against Messrs. Milken and Keating is a constant theme in the correspondence between members of the two committees, and the correspondence from interested parties to the committee members, that were later entered into the congressional record. *See e.g.,* 137 Cong.Rec. H11,811–12 (daily ed. Nov. 26, 1991). Representative Dingell, the Chairman of the Committee on Energy and Commerce who aided the Committee on Banking, Finance and Urban Affairs in drafting section 27A, offered these remarks in support of the statute:

> This provision [section 27A] is critically important because Lampf has resulted in the dismissal of many private rule 10(b)–5 actions against figures in major financial scandals including Charles Keating, Michael Milken, and others. Those cases *can now be reinstated* on motion* * *

Cong.Rec. H11,811 (daily ed. Nov. 26, 1991) (emphasis added). Representative Dingel's extended remarks track the substance of a letter he wrote to the Chairman of Committee on Banking, Finance and Urban Affairs on November 22, 1991 and that was later entered into the Congressional Record:

---

**7.** Added to the legislative record subsequently.

[T]he Beam decision has resulted in dismissal of many currently pending private 10b–5 actions against Charles Keating, Michael Milken and other figures in major financial scandals * * * * Motions to dismiss an additional $4.55 billion suits are pending * * * * In some instances the *Lampf* decision threatens verdicts already rendered.... The compromise to be included in the Conference Report is urgently needed to allow timely filed cases to be reinstated and to avoid dismissal of further securities fraud cases that were timely filed * * * * In light of your Committee's extensive hearings on Charles Keating and the circumstances surrounding the failure of Lincoln Savings and Loan, we hope you will support this result * * * *

137 Cong.Rec. H11,811 (daily ed. Nov. 26, 1991). Similarly, Mr. Markey's extended comments state that "with one stroke of the pen" the *Lampf* Court "signed over a multi billion dollar check to Michael Milken, Charles Keating and a coalition of special interests." 137 Cong.Rec. H11,812 (daily ed. Nov. 26, 1991). *See also,* 137 Cong.Rec. S17,307 (daily ed. Nov. 21, 1991) (comments of Senator Domenici and Senator Riegle).

Congress judged that "it's simply not fair that fraud cases of such magnitude be dismissed by an arbitrary, legal technicality." 137 Cong.Rec. S17,725 (daily ed. Nov. 22, 1991). *See also* 137 Cong.Rec. H11,811 (daily ed. Nov. 26, 1991) (letter from House Chairman of Committee on Energy and Resources to House Chairman of Banking, Finance and Urban Affairs, November 22, 1991) (the application of *Lampf,* through *Beam,* to these particular cases led to an "completely unfair result."). Anxious to avoid what Congress perceived as an undesirable outcome in particular cases, and hesitant to enact a statute of limitations different from *Lampf,* Congress simply left *Lampf* untouched but instructed the courts not to apply it to a certain group of cases. As in *Klein,* the statute's "great and controlling purpose" was to direct the

outcome in specific cases without changing the governing law. 80 U.S. (13 Wall.) at 147–48.

■■■ However, as discussed above, Congress may not direct the adjudicative process without changing a substantive or procedural rule. *United States v. Klein,* 80 U.S. (13 Wall.) 128, 20 L.Ed. 519 (1871); *Pacemaker Diagnostic Clinic Inc.,* 725 F.2d at 544. Moreover, Congress was aware that, by enacting section 27A, it was tacitly directing a result in the cases of those individuals whom Congress held in low esteem, without changing the *Lampf* rule. *E.g., United States v. Sioux Nation of Indians,* 448 U.S. 371, 398, 100 S.Ct. 2716, 2732, 65 L.Ed.2d 844 (1980); *Klein* 80 U.S. (13 Wall.) at 147. A "legislative direction to a court to find a judgment in a certain way would be little less than a judgment rendered directly by Congress." *Sioux Nation of Indians,* 448 U.S. at 398, 100 S.Ct. at 2732 (quoting *Nock v. United States* 2 Ct.Cl. 451, 457 (1867)).

### C.

The court now turns to sub-section (b). Section 27A(b) mandates that private § 10(b) actions pending on June 19, 1991 and subsequently dismissed be reinstated on motion by the plaintiffs.

The court's discussion of sub-section (a) also applies to sub-section (b). However, sub-section (b) goes further. It directs that the federal courts reverse any dismissals they have granted under the *Lampf* and *Beam* decisions. This is a classic example of Congress attempting to compel the result in a group of cases without making a change in the underlying law. And it raises an additional problem: section 27A(b) impermissibly directs the courts to reverse final judgments. Thus, even if this court were to find that section 27A changed the law announced in *Lampf,* it would be compelled to find sub-section (b) otherwise unconstitutional since a change in law cannot affect final judgments of courts.[8]

---

**8.** The United States and the S.E.C. point to two exceptions to the rule prohibiting Congress from negating the effect of *res judicata.* First,

"Congress has the power to waive the *res judicata* effect of a prior judgment entered in the Government's favor on a claim against the Unit-

On its face, section 27A reverses the application of *Lampf* to the *Lampf* litigants themselves. The Supreme Court applied its *Lampf* decision to the parties before it. But under section 27A(b), the *Lampf* litigants can avoid the Supreme Court's judgment by making a motion within sixty days of § 27A's enactment.[9]

The Chairman of the Senate Committee on Banking, Housing and Urban Affairs stated that section 27A was "not intended to apply to or in any way affect the parties * * * in the Lampf decision itself." 137 Cong.Rec. S17,382–83 (daily ed. Nov. 21, 1991). This suggests that Congress may not have intended to nullify the effect of *Lampf* upon the *Lampf* litigants. However, other members of Congress commented that "as the statute specifically states" and as "the language of Section 476 unambiguously" shows, section 27A reverses the [*Lampf*] rule "to the case and the parties of Lampf versus Gilbertson itself." 137 Cong.Rec. H11,813 (daily ed. Nov. 26, 1991) (extended remarks of Representative Markey). Moreover, the Chairman of the House committee clarified that section 27A was to "have [its] clear meaning and shall not be interpreted to exclude any private civil action falling squarely within the plain meaning of the words of this statute." 137 Cong.Rec. H11,811 (daily ed. Nov. 26, 1991). While the legislative history is ambiguous as to what Congress intended with regard to the *Lampf* parties, the express language of section 27A changes the application of the *Lampf* decision to those litigants.

▮▮▮▮ Similarly, section 27A(b) allows the litigants in other cases which were dismissed under *Lampf* to avoid the final judgments of the courts in those cases. However, Congress does not have the power to upset the final judgments of either

the Supreme Court or the lower federal courts. *Georgia Ass'n of Retarded Citizens v. McDaniel,* 855 F.2d 805 (11th Cir. 1988); *Daylo v. Administrator of Veterans' Affairs,* 501 F.2d 811, 816 (D.C.Cir. 1974). This effect of section 27A(b) is improper for two reasons. First, "a judicial declaration subject to discretionary suspension by another branch of government may easily be characterized as an advisory opinion." 13 Wright, Miller & Cooper, Federal Practice and Procedure § 3529.1 (1978). Advisory opinions are not within the judicial power. *Hayburn's Case,* 2 U.S. (2 Dall.) 408, 1 L.Ed. 436 (1792). Second, section 27A(b) is an act of legislative review. It intrudes upon the exclusive power of the judiciary to adjudicate cases. *United States v. O'Grady,* 89 U.S. (22 Wall.) 641, 647–48, 22 L.Ed. 772 (1874); *Georgia Ass'n of Retarded Citizens,* 855 F.2d 805 (11th Cir.1988). When Congress legislates in regard to "a pending case it walks a line between judicial and legislative authority, and exceeds that line if it sets aside a judgment or orders retrial of a previously adjudicated issue." *United States v. Sioux Nation of Indians,* 448 U.S. 371, 427–430, 100 S.Ct. 2716, 2748, 65 L.Ed.2d 844 (1980) (Rehnquist, J., dissenting) (emphasis omitted).

## D.

In an attempt to construe section 27A so that it is constitutional, defendant Price Waterhouse suggests that it can be interpreted to not limit the application of *Lampf.* In order to achieve that result, defendant argues that the statute of limitations applicable in the various jurisdiction as such laws existed on June 19, 1991 was the *Lampf* rule—notwithstanding that neither the Supreme Court nor Congress had formally declared this before June 20, 1991.

ed States." *United States v. Sioux Nation of Indians,* 448 U.S. 371, 397, 100 S.Ct. 2716, 2731, 65 L.Ed.2d 844 (1980); *United States v. Cherokee Nation,* 202 U.S. 101, 26 S.Ct. 588, 50 L.Ed. 949 (1906). Second, Congress can waive the benefit of judgments in favor of a public right. *E.g., Pennsylvania v. Wheeling & Belmont Bridge Co,* 59 U.S. (18 How.) 421, 15 L.Ed. 435 (1855); *Daylo v. Administrator of Veteran's Affairs,* 501 F.2d 811, 816 (D.C.Cir.1974). However, section

27A(b) is not within either of these two exceptions.

9. The court notes that the § 10(b) claims of the *Lampf* plaintiffs have been reinstated pursuant to section 27A. *Gilbertson v. Leasing Consultants Associates,* No. 86–1369–RE (D.Or. Feb. 6, 1992).

Thus section 27A would not have to be read to direct an outcome different from that required by *Lampf*.[10]

However, *Lampf* is an instance of a change in a rule. Justice Souter stated that the federal statute of limitations for § 10(b)–5 claims effectuated a "change in a rule of law [state borrowing] that had been settled for forty years." *Beam*, 111 S.Ct. at 2785. The Supreme Court recognized that it was announcing a new rule, and it said that the "state borrowing doctrine may not be lightly abandoned." *Id.* at 2778. In this circuit, *Lampf* clearly worked a change from the rule of *Stitt v. Williams*, 919 F.2d 516, 522 (9th Cir.1990).

In addition, defendant's argument would render the statute itself a nullity. That is, Congress' obvious attempt to change the application of *Lampf* to prior cases would be nullified by simply saying that the *Lampf* rule—although undeclared—always was the law. It would mean that Congress performed a useless act. That result is of course contrary to both the language of section 27A and its legislative history.

This court therefore disagrees with defendant's argument that prior to the *Lampf* decision the statute of limitations applicable to this case was the *Lampf* rule.

### E.

This court therefore concludes that section 27A neither changes the *Lampf* rule as plaintiffs argue, nor preserves the *Lampf* rule as defendant argues. Section 27A(a) directs the outcome in certain cases by restricting *Lampf* without changing the

underlying law, and thereby interferes with the judicial duty to adjudicate cases. *United States v. Klein*, 80 U.S. (13 Wall.) 128, 20 L.Ed. 519 (1871); *Pacemaker*, 725 F.2d at 544. In addition, section 27A(b) improperly nullifies the judgment of the Supreme Court in *Lampf* and the final judgments of other federal courts which have dismissed § 10(b)–5 actions in accord with *Lampf* and *Beam*. *United States v. O'Grady*, 89 U.S. (22 Wall.) 641, 647, 22 L.Ed. 772 (1874); *Georgia Ass'n of Retarded Citizens*, 855 F.2d at 810. Congress may do neither of these two things under the Constitution.

### VII.

The court now turns to section 27A's impact on *Beam*. The applicability of the *Lampf* rule to cases pending before June 21, 1991 is predicated on *Beam*. This court concludes, for the reasons discussed below, that section 27A changes the rule announced in *Beam*, that *Beam*'s decision on retroactivity was a *constitutional* decision, and that Congress cannot change a constitutional rule. The Supreme Court, and not Congress, has the final word on the meaning of the Constitution.

### A.

In *Beam*, the Court determined that selective prospective application of a newly announced federal law violated fundamental principles of adjudication. Therefore, the Court held that it is "error to refuse to apply a rule of federal law retroactively [to other similarly situated litigants in pending cases] after the case announcing the rule

10. This argument is based on the declaratory theory of judicial pronouncement: since judges find the law, the *Lampf* court only found the rule that had always existed yet remained hidden from view. The declaratory theory has support. *E.g., Beam*, 111 S.Ct. at 2443; *American Trucking Ass'n v. Smith*, 496 U.S. 167, 177, 110 S.Ct. 2323, 2330, 110 L.Ed.2d 148 (1990) (Scalia J., concurring); *Linkletter v. Walker*, 381 U.S. 618, 622–23, 85 S.Ct. 1731, 1733–34, 14 L.Ed.2d 601 (1965). However, in the common law tradition, the declaratory theory of judicial pronouncement reflects a faith in the existence of immutable principles, but assumes that discernment of those principles occurs within the context of historical time, in the light of previous experience and through the process of trial

and error. T.F.T. Plucknett, A Concise History of the Common Law 332–343 (5th ed. 1956); J.G.A. Pocock, The Ancient Constitution and the Feudal Law 172–173 (2d ed. 1987). Therefore the idea that judges declare law is not incompatible with the idea of change. While an argument can be made that principles are immutable (*e.g., American Trucking* 110 S.Ct. at 2345), the rules enacted by Congress or announced by the judiciary that reflect such principles are subject to change for the reason that human judgment is not constant or unerring. *E.g., Boys Markets, Inc. v. Retail Clerk's Union Local 770*, 398 U.S. 235, 257, 90 S.Ct. 1583, 1595, 26 L.Ed.2d 199 (1970) (Stewart J., concurring opinion) (quoting Justice Frankfurter).

has already done so." *James B. Beam Distilling Co. v. Georgia*, — U.S. —, 111 S.Ct. 2439, 2446, 115 L.Ed.2d 481 (1991). *Lampf* was applied to the litigants before the Supreme Court. The statute of limitations announced in *Lampf* is subject to the rule announced in *Beam*. *Lampf* has therefore been applied to similarly situated cases that were pending at the time *Lampf* was decided. As discussed above, that application was the reason Congress passed section 27A.

The United States and the S.E.C. argue that the *Beam* decision does not suggest that Congress could not curtail the retroactive effect of that decision. However, *Beam* not only announced a rule of retroactivity, but insured that the *Beam* decision itself was applied retroactively to cases pending at the time it was announced. The *Beam* court said that when the Court does "not reserve the question" of the retroactivity of a decision to the litigants, the Court intends to apply the new rule retroactively to the litigants. *Id.* 111 S.Ct. at 2445; *compare American Trucking Ass'ns, Inc. v. Scheiner*, 483 U.S. 266, 297, 107 S.Ct. 2829, 2847, 97 L.Ed.2d 226 (1987) (remanding case to decide whether ruling "should be applied retroactively...."). In *Beam*, the Court reversed the judgment of the lower court, remanded *Beam* for further proceedings, and did not reserve the question of the application of *Beam* to the *Beam* litigants. Accordingly, since the *Beam* decision prohibits selective prospectivity, *Beam* applies to all cases pending at the time *Beam* was announced in which retroactivity is an issue.

### B.

Plaintiffs argue that section 27A did not change the *Beam* decision since it did not affect the nexus between *Beam* and *Lampf*. That is, by reversing the effect of *Lampf* upon the *Lampf* litigants, section 27A removed the condition precedent that made *Beam* relevant to *Lampf*. The end result, say plaintiffs, is that the *Lampf* statute of limitations may now be applied purely prospectively. Section 27A's reversal of the *Lampf* decision as to the *Lampf* litigants supports plaintiffs' argument that

section 27A transformed *Lampf* into a purely prospective rule. But that does not answer the violence that section 27A did to *Beam*.

*Beam* dealt with two issues of retroactivity. *Beam* not only announced a rule of retroactivity, but *Beam* also applied its *decision on retroactivity retroactively*. In the context of securities law, *Beam* directed not just the retroactivity of the statute of limitations announced in *Lampf*; it also affected the retroactivity of any federal statute of limitations announced by a court prior to the decision in *Beam*. Therefore, *Beam* mandates that a judicially declared statute of limitations which operates on the litigants in a case will also operate on similarly situated litigants in cases announced both subsequent and prior to the *Beam* decision.

Section 27A contradicts that result and directs that, at least in § 10(b) cases, *Beam* will apply only to future cases. That conflicts with the rule announced in *Beam*. *Beam* forbade the selective prospective application of new judicially announced federal rules and required their retroactive application. Section 27A replaces the *Beam* decision against selective prospectivity with a law of selective prospectivity in certain cases. Permitting selective prospective application of statutes of limitations after the *Beam* court constitutionally forbade selective prospective application of such rules is an attempt to change *Beam*.

### C.

The Attorney General argues that *Beam* was not a *constitutional* decision because a majority of the court did not base their decisions on constitutional grounds. A majority of the Supreme Court joined in the *Beam* judgment, but the reasons for that judgment are contained in four separate opinions. Notwithstanding, this court believes that those opinions demonstrate that the Supreme Court concurred that its decision was on constitutional grounds.

The *Beam* decision is founded on the Court's definition of what constitutes the "judicial responsibility." *Beam*, 111 S.Ct.

at 2450; *see also id.* at 2443, 2451. While Justice Souter began by asserting that the question of how a new rule should be applied is a question of "pure[ ] * * * judicial mechanics," his analysis of retroactivity heavily relied upon *Griffith v. Kentucky*, 479 U.S. 314, 328, 107 S.Ct. 708, 716, 93 L.Ed.2d 649 (1987). *Beam* 111 S.Ct. at 2443. This reliance on the *Griffith* decision is significant. What Justice Souter called a question of "judicial mechanics," was termed a question of constitutional proportion by *Griffith*. 479 U.S. at 322, 107 S.Ct. at 712; *see also, Beam*, 111 S.Ct. at 2449 (Blackmun, J., concurring) (tracking the language in *Griffith*). Similarly, Justice Scalia found the prohibition against selective prospectivity in the "judicial power" of "Article III § 1 * * * [and] as understood by our common law tradition." *Id.* 111 S.Ct. at 2451 (Scalia, J., concurring). Employing slightly different phrasing, Justice Blackmun wrote "[w]e fulfill our judicial responsibility by requiring retroactive application of each new rule we announce * * * * To do otherwise is to warp" the "role that ... judges play in a government of limited powers." *Id.* at 2450.

The United States concedes that *Beam* focused on the meaning of the judicial power. But it argues that Justice Souter based his decision on the non-constitutional dimensions of that power. The justices did use different sources to define the meaning of the judicial power. They referred to the "common law tradition," *id.* at 2451, to "basic norms of constitutional adjudication," *id.* at 2449, and to principles of "equity" and "equality." *Id.* at 2446. But, however phrased, the judicial power is rooted in Article III of the Constitution and its meaning therefore remains a constitutional question. The method of analysis in *Beam* was not exceptional. *E.g., Marbury v. Madison*, 5 U.S. (1 Cranch) 137, 2 L.Ed. 60 (1803) (clarifying the significance of the judicial power); *Hayburn's Case* 2 U.S. (2 Dall.) 408, 1 L.Ed. 436 (1792) (establishing prohibition against advisory opinions).

The Court agreed in *Beam* that its decision was predicated on three overlapping components of the judicial responsibility: judicial review, the adjudicative process, and the obligation to refrain from legislative action. First, the prohibition against selective prospectivity "derives from the integrity of judicial review, which does not justify applying principles determined to be wrong to litigants who are in or may still come to the court." *Beam*, 111 S.Ct. at 2450. *Beam* relied on *Griffith*. "[I]f we do not resolve all cases before us on direct review in light of our best understanding of governing constitutional principles, it is difficult to see why we should so adjudicate any case at all * * * * *" *Griffith*, 479 U.S. at 323, 107 S.Ct. at 713 (quoting *Mackey v. United States*, 401 U.S. 667, 679, 91 S.Ct. 1160, 1173, 28 L.Ed.2d 404 (1971)). The *Griffith* Court also observed that "[a]s a practical matter * * * [the Supreme Court] cannot hear each case pending on direct review and apply the new rule. But we fulfill our judicial responsibility by instructing the lower courts to apply the new rule retroactively to cases not yet final." *Id.* Following *Griffith*, the *Beam* court determined that by requiring the lower courts to retroactively apply newly announced civil law, the Court "fulfilled it judicial responsibility" to safeguard judicial review. *Id.* 111 S.Ct. at 2450.

Second, the *Beam* prohibition against selective prospectivity was required by the "equality principle, that similarly situated litigants should be treated the same." *Id.* 111 S.Ct. at 2446; *see id.* at 2450. The reliance on *Griffith* identified a constitutional principle that "derives from the role of adjudication in [the] constitutional scheme." *Id.* 111 S.Ct. at 2450. The *Griffith* Court wrote, "it hardly comports with the ideal of * * * justice with an even hand" that "one chance beneficiary—the lucky individual whose case was chosen as the occasion for announcing the new principle—enjoys retroactive application, while others similarly situated have their claims adjudicated under the old doctrine." 479 U.S. at 327, 107 S.Ct. at 715. The *Beam* court underscored that the equality principle is a "fundamental component of *stare decisis.*" *Id.* 111 S.Ct. at 2444. The Court pointed out that the concept of precedent constrains a court "from pick[ing] and

choos[ing] among similarly situated" litigants "those who alone will receive the benefit of a 'new' rule." *Id.* Therefore, retroactive application of a new rule insures litigants against arbitrary application of the law, a fundamental aspect of precedent. *Id.* at 2450.

Third, *Beam* indicates that the rule prohibiting selective prospectivity is required by the separation of the judicial and legislative functions. *Id.* at 2450–51. Selective prospectivity encourages judicial law-making. A court's "assertion of power to disregard current law in adjudicating cases" pending at the time a new rule is announced is "quite simply an assertion" that the courts' "constitutional function is not one of adjudication but in effect of legislation." *Griffith,* 479 U.S. at 323, 107 S.Ct. at 713 (quoting *Mackey v. United States,* 401 U.S. at 679, 91 S.Ct. at 1173). In contrast, retroactive application of all newly declared laws acts as a "check[ ] upon judicial law making; to eliminate them is to render courts substantially more free to 'make new law,' and thus to alter in a fundamental way the assigned balance of responsibility among the three Branches." *Beam,* 111 S.Ct. at 2451 (Scalia, J., concurring); *see id.* at 2450 (Blackmun, J., concurring).

Plaintiffs also argue that *Beam* should not be considered to be a constitutional decision. First, plaintiffs point out that in *Linkletter v. Walker,* 381 U.S. 618, 629, 85 S.Ct. 1731, 1737, 14 L.Ed.2d 601 (1965) the Court held that "the Constitution neither prohibits nor requires retrospective effect." However, the Supreme Court reconsidered *Linkletter* in *Griffith v. Kentucky.* The *Griffith* Court held that "failure to apply a newly declared constitutional rule to criminal cases pending on direct review violates basic norms of constitutional adjudication." 479 U.S. at 322, 107 S.Ct. at 713.

Second, plaintiffs make much of Justice Souter's characterization of the issue in *Beam* as a choice of law question. *Beam,* 111 S.Ct. at 2444. Plaintiffs suggest that the use of this phrase shows that the question before the Court was not one of constitutional dimension. However, the use of the phrase "choice of law" is itself grounded in constitutional principles. In *Marbury v. Madison,* 5 U.S. (1 Cranch) 137, 2 L.Ed. 60 (1803), Justice Marshall wrote that "if two laws conflict with each other," the obligation of the courts "to decide the operation of each" is of "the very essence of the judicial duty." *Id.* 5 U.S. (1 Cranch) at 176.

> When "a law be in opposition to the constitution; if both the law and the constitution apply to a particular case, so that the court must either decide that case, conformable to the law, disregarding the constitution; or conformable to the constitution disregarding the law; the court must determine which of these conflicting rules governs the case."

*Id.* Justice Souter's depiction of the issue in *Beam* as a choice of law problem cannot be interpreted as a judgment that the *Beam* decision rests on less than constitutional ground.

Plaintiffs then argue that even if *Beam* is a constitutional decision, it only requires retroactive application of *constitutional* rules since, as plaintiffs point out, the underlying litigation in *Beam* concerned the commerce clause. Plaintiffs argue that the application of the § 10(b) statute of limitations is merely a *statutory* issue. However, as applicable to this case, *Beam* is a decision about the retroactivity of judicially announced civil rules, and not just judicially announced constitutional rules. *Beam,* 111 S.Ct. at 2446. And the basis for the *Beam* decision is what the *Constitution* requires in regard to retroactivity of such rules.[11]

### D.

The constitutional grounds for *Beam* may be mixed; however, the end result is

---

**11.** Many cases have held *Beam* to apply to newly announced non-constitutional rules. This is why federal courts, including this court, have read *Beam* in conjunction with *Lampf. E.g. Boudreau v. Deloitte, Haskins & Sells,* 942 F.2d 497 (8th Cir.1991) (per curiam); *Barr v.*

*McGraw–Hill,* 770 F.Supp. 855, 861 (S.D.N.Y. 1991) ("nothing * * * indicates that the Court's analysis in *Jim Beam* is intended to be limited to newly announced constitutional rules."); *Berning v. A.G. Edwards & Sons, Inc.,* 774 F.Supp. 480, 483–84 (N.D.Ill.1991).

1112

that *Beam* is based on the Constitution. It is incontrovertible that the Supreme Court has the final word on constitutional questions, and Congress may not enact a law that contravenes the Supreme Court's judgment on questions of constitutional interpretation. *Marbury v. Madison*, 5 U.S. (1 Cranch) 137, 2 L.Ed. 60 (1803).

### VIII.

This court is aware of the concerns that prompted Congress to enact section 27A. But such concerns cannot override the Constitution. Congress did not enact a statute of limitations for § 10(b) actions. Instead, without making any change in the underlying law, Congress attempted to direct the outcome of a certain group of cases. Section 27A intrudes into the powers reserved to the judiciary by Article III, and violates the constitutional separation of powers between the judicial and legislative branches.

IT IS ORDERED that plaintiffs' motion to reinstate their § 10(b) claims is denied.