Edward ADLER, et al., Plaintiffs,

v.

**BERG HARMON ASSOCIATES, et al., Defendants.**

**No. 89 Civ. 8114 (WCC).**

United States District Court, S.D. New York.

April 27, 1992.

---

Beigel & Sandler, Ltd. (Bijan Amini, Alexander T. Moore, of counsel), New York City, for plaintiffs.

Jacobs Persinger & Parker (I. Michael Bayda, of counsel), New York City, for defendants Berg Harmon Associates, Harmon Associates, Harquel Associates II, Robert T. Harmon Corp., Robert T. Harmon, Charles N. Loccisano, Riveria Partners, Inc., Berg Harmon Lexington Properties, Berg Harmon Properties, III, Berg Harmon Southeast Consulting, Berg Ventures Inc., BH Properties Associates BH

Properties, Associates II, BHS Properties, Eastern Realty Consultants, FEC Mortg. Co., First Realty Management, Metro Ventures, Harmon Envicon Associates, Southeast Realty Consultants Co., Southern Realty Consultants and Southern Ventures Inc.

Skadden, Arps, Slate, Meagher & Flom (William P. Frank, Richard S. Simon, Peretz Bronstein, of counsel), New York City, for Primerica Corp., Berg Enterprises, Inc. and Kenneth Berg.

## OPINION AND ORDER

WILLIAM C. CONNER, District Judge:

This action is presently before the Court on the motion of plaintiffs, Edward Adler, et al., pursuant to Section 476 of the Federal Deposit Insurance Corporation Improvement Act of 1991, Pub.L. No. 102–242, to be codified as Section 27A of the Securities Exchange Act of 1934, 15 U.S.C. § 78aa–1, to reinstate their claims under Section 10(b) of the Exchange Act ("Section 27A").

## BACKGROUND

This case arises out of plaintiffs' purchase of interests in a number of limited partnerships (the "Berg Harmon Partnerships") sponsored by defendants. On or about December 7, 1989, plaintiffs commenced this action alleging violations of Section 10(b) of the Securities Exchange Act of 1934, 15 U.S.C. § 78j ("Exchange Act"), Section 17(a) of the Securities Act of 1933, 15 U.S.C. § 78q, the Racketeering Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. § 1961 *et seq.*, and of various state laws. Thereafter, defendants moved to dismiss the Complaint under Rules 9(b) and 12(b)(6), Fed.R.Civ.P. Subsequently, defendants moved for partial summary judgment on the Section 10(b) cause of action based upon the one-year/three-year limitations period adopted by the Second Circuit in *Ceres Partners v. GEL Assocs.*, 918 F.2d 349 (2d Cir.1990). On

1. In this Amended Complaint, additional plaintiffs joined in the action.

2. On April 7, 1992, the Court issued an Opinion and Order dismissing plaintiffs' Second Amend-

June 20, 1991, the Supreme Court held that actions brought under § 10(b) of the Exchange Act must be commenced within one year of the discovery of the facts constituting the violation and no later than three years after the violation. *Lampf, Pleva, Lipkind, Prupis & Petigrow v. Gilbertson,* — U.S. —, 111 S.Ct. 2773, 115 L.Ed.2d 321 (1991). As a result of the decision in *James B. Beam Distilling Co. v. Georgia,* — U.S. —, 111 S.Ct. 2439, 115 L.Ed.2d 481 (1991), decided on the same day as *Lampf,* the one-year/three-year rule became retroactively applicable to all existing cases, including the present one. In light of *Lampf* and *Beam,* on July 2, 1991, plaintiffs amended their Complaint to delete the Section 10(b) claims, except to the extent the securities fraud claims served as predicate acts to a RICO action.[1] The Court then directed that the motion to dismiss be rebriefed to reflect the dismissal of the securities claims.[2]

On December 19, 1991, Congress amended the Securities Exchange Act of 1934 by enacting Section 27A to modify the retroactive effect of *Lampf.* Section 27A provides for reinstatement upon motion of certain actions dismissed under *Lampf,* provided the action was commenced prior to June 19, 1991 and had been timely filed according to the statute of limitations applicable on June 19, 1991. It is pursuant to this statute that plaintiffs argue for reinstatement of their Section 10(b) claims.

## DISCUSSION

*Motion to Reinstate Section 10(b) Claims*

A. Section 27A Analysis

Section 27A of the Exchange Act overrides the retroactive application of the one-and-three-year limitations rule announced by the Supreme Court in *Lampf.* Section 27A provides, in pertinent part:

(b) EFFECT ON DISMISSED CAUSES OF ACTION.—Any private civ-

ed Complaint pursuant to Rules 9(b) and 12(b)(6), Fed.R.Civ.P., without prejudice. The Court assumes familiarity with that decision.

il action implied under section 10(b) of this Act that was commenced on or before June 19, 1991—

(1) which was dismissed as time barred subsequent to June 19, 1991, and

(2) which would have been timely filed under the limitation period provided by the laws applicable in the jurisdiction, including principles of retroactivity, as such laws existed on June 19, 1991, shall be reinstated on motion by the plaintiff not later than 60 days after the date of enactment of this section.

Plaintiffs claim that under this provision they are entitled to reinstatement of their Section 10(b) claims, which were effectively dismissed pursuant to *Lampf*.[3] Defendants[4] submit that plaintiffs' motion should be denied because (1) plaintiffs' Section 10(b) claims are untimely even under the law as it existed in this Circuit, including principles of retroactivity, on June 19, 1991; (2) *Lampf* and *Beam* are the laws which were applicable on June 19, 1991 since the Supreme Court did not make new law when it issued those decisions but simply found the law as it then existed; and (3) Section 27A is unconstitutional because by enacting that provision (a) Congress has prescribed rules of decision to the judiciary in cases pending before it without repealing or amending the underlying law, (b) Congress has required courts to disregard their traditional function "to decide cases before them based upon their best *current* understanding of the law," and (c) Congress has required courts to reopen final judgments rendered in private civil actions.

**3.** The Harmon defendants err in their assertion that plaintiffs voluntarily dismissed their Section 10(b) claims. Although the Court never formally ordered dismissal, in a letter to the Court dated July 2, 1991, plaintiffs' counsel wrote: "In view of the *Lampf* decision, we do not believe we can oppose counsel's request that the 10(b)(5) claims in the above-referenced action be dismissed."

**4.** Those opposing this motion include defendants Kenneth Berg, Berg Enterprises, Inc., and Primerica Corporation (the "Berg defendants"), defendants Berg Harmon Associates, Harmon Associates, Harquel Associates II, Robert T. Harmon Corporation, Robert T. Harmon, Charles N. Loccisano, Riveria Partners, Inc., Berg Har-

### 1. Plaintiffs Added After June 19, 1991

Plaintiffs who joined this action by Amendments to the Complaint on July 2, 1991 and October 7, 1991 are not entitled to move for reinstatement under Section 27A. The plain language of the statute permits reinstatement only of claims commenced prior to June 20, 1991 and dismissed pursuant to *Lampf* and *Beam*. Moreover, the Court disagrees with plaintiffs' argument that the claims of the post-*Lampf* plaintiffs relate back to the date of the filing of the original Complaint in 1989 pursuant to Rule 15(c), Fed.R.Civ.P.

Rule 15(c) in effect at the time of the filing of the Second Amended Complaint provided:

Whenever the claim or defense asserted in the amended pleading arose out of the conduct, transaction, or occurrence set forth or attempted to be set forth in the original pleading, the amendment relates back to the date of the original pleading. An amendment changing the party against whom a claim is asserted relates back if the foregoing provision is satisfied and, within the period provided by law for commencing the action against the party to be brought in by amendment that party (1) had received such notice of the institution of the action that the party will not be prejudiced in maintaining his defense on the merits, and (2) knew or should have known that, but for a mistake concerning the identity of the proper party, the action would have been brought against the party.

mon Lexington Properties, Berg Harmon Properties, III, Berg Harmon Southeast Consulting, Berg Ventures Inc., BH Properties Associates, BH Properties Associates II, BHS Properties, Eastern Realty Consultants, FEC Mortgage Co., First Realty Management, Metro Ventures, Harmon Envicon Associates, Southeast Realty Consultants Company, Southern Realty Consultants, and Southern Ventures Inc. (the "Harmon defendants"), and defendants James F. Moscowitz, David T. Smith, David T. Smith Associates, and Johnstown Management Company (the "Smith and Johnstown defendants"). The Smith and Johnstown defendants have submitted no papers of their own in support of their motions.

Fed.R.Civ.P. 15(c).[5] Although the language of Rule 15(c) does not explicitly govern the relation back of amendments changing or adding plaintiffs, the Advisory Committee Notes to the 1966 amendment to the rule state that "the attitude taken in revised Rule 15(c) toward change of defendants extends by analogy to amendments changing plaintiffs." Therefore, in order for claims by a new plaintiff to relate back to the original complaint, the amendment must relate to the same conduct, transaction, or occurrence described in the original complaint, the defendant must have had the requisite notice of the original action, and there must have been some mistake in the original pleading as to the proper party.

The additional plaintiffs to this action, like the original plaintiffs, are limited partners in the Berg Harmon Partnerships. In *Stoppelman v. Owens*, 580 F.Supp. 944, 946 (D.D.C.1983), the court found that where the original plaintiffs were limited partners alleging securities fraud by the defendants, the status of the original plaintiffs implied notice as to the existence of possible claims by other limited partners. The court concluded that "[t]he purpose behind the statute of limitations, namely notice, is not defeated in this action by permitting the amended complaint to relate back [to the date the original complaint was filed]." *Id.* at 947. While this Court agrees that defendants in this action may be charged with notice of the existence of possible claims by other limited partners, notice in and of itself is insufficient to satisfy Rule 15(c).

As Judge Sweet noted in *Morin v. Trupin*, 778 F.Supp. 711, 735 (S.D.N.Y.1991), "Subsection (2) makes clear that Rule 15(c) does not exist merely to keep the door open for any tardy plaintiff of whom a defendant may be aware. Rather, Rule 15(c) stands as a device for adding a party who 'but for a *mistake* concerning the identity of the proper party' would have been named originally." There is no suggestion here that the additional plaintiffs would have been included in the original Com-

plaint "but for" a mistake of identity. "Clearly the relation back rule was not designed to provide a means either to circumvent or to expand the limitations period." *In re Allbrand Appliance & Television Co., Inc.*, 875 F.2d 1021, 1025 (2d Cir.1989). Accordingly, the Court concludes that the criteria for relation back under Rule 15(c) have not been met, and the plaintiffs added in the July 2, 1991 and October 7, 1991 Complaints have no Section 10(b) claims to reinstate pursuant to Section 27A.

### 2. Plaintiffs Residing in the Third Circuit

■ Plaintiffs residing in the Third Circuit were subject to the one-year/three-year rule as of April 8, 1988, before the commencement of this suit. *In re Data Access Systems Securities Litigation*, 843 F.2d 1537 (3d Cir.), *cert. denied*, 488 U.S. 849, 109 S.Ct. 131, 102 L.Ed.2d 103 (1988). Since this action was not filed until December 1989, more than three years after the latest partnership interest was purchased, such plaintiffs' Section 10(b) claims are time-barred whether or not this Court finds that the one-year/three-year rule announced by the Second Circuit in *Ceres* applies retroactively. *See Ceres*, 918 F.2d at 358–59 (applying *Data Access* to claims of New Jersey plaintiffs).

### 3. The Remaining Plaintiffs

■ In order to determine whether the remaining plaintiffs' claims should be reinstated pursuant to Section 27A, the Court must ascertain which limitations period, including principles of retroactivity, applied to plaintiffs' claims as of June 19, 1991.

In *Ceres Partners v. GEL Assocs.*, 918 F.2d 349 (2d Cir.1990), the Court of Appeals for the Second Circuit joined the Third and the Seventh Circuits, *see In re Data Access Systems Securities Litigation*, 843 F.2d 1537 (3d Cir.), *cert. denied*, 488 U.S. 849, 109 S.Ct. 131, 102 L.Ed.2d 103 (1988); *Short v. Belleville Shoe Mfg. Co.*, 908 F.2d 1385 (7th Cir.1990), *cert. de-*

---

**5.** Congress has amended Rule 15(c) effective December 1, 1991. The result reached in the instant case would be no different under the new version of the rule.

*nied,* — U.S. ——, 111 S.Ct. 2887, 115 L.Ed.2d 1052 (1991), in adopting a uniform federal statute of limitations governing claims under Section 10(b) identical to the one eventually adopted by the Supreme Court in *Lampf.* Under the uniform rule, a Section 10(b) claim must be brought "one year after discovery of the conduct alleged to constitute the violation, but no more than three years after the occurrence of such conduct." *Ceres,* 918 F.2d at 359. As this Court has ruled, "the three-year period of repose acts as an absolute bar." *Mekhjian v. Wollin,* 782 F.Supp. 881, 886 (S.D.N.Y.1992).

The *Ceres* Court left open the question of whether the one-year/three-year rule applies retroactively to cases that were already pending at the time of its adoption. However, in *Welch v. Cadre Capital,* 923 F.2d 989 (2d Cir.) ("*Welch I*"), *vacated and remanded sub nom., Northwest Savings Bank v. Welch,* — U.S. ——, 111 S.Ct. 2882, 115 L.Ed.2d 1048 (1991), the Second Circuit ruled that the new limitations period did not apply retroactively to bar the *Welch* complaint. *See also Levine v. NL Indus., Inc.,* 926 F.2d 199, 201–02 & n. 1 (2d Cir.1991). In reaching its determination in *Welch I* that *Ceres* should not be applied retroactively to bar plaintiffs' Exchange Act claims, the Court of Appeals applied the three-part test set forth in *Chevron Oil Co. v. Huson,* 404 U.S. 97, 92 S.Ct. 349, 30 L.Ed.2d 296 (1971).

The Court of Appeals explained the *Chevron* test as follows:

> To qualify for purely prospective application, a decision 'must establish a new principle of law, either by overruling clear past precedent on which litigants may have relied, ... or by deciding an issue of first impression whose resolution was not clearly foreshadowed.' (citation omitted and footnote omitted). A court should then 'weigh' in each case whether retroactive application would conflict with the purposes of the rule and whether it would produce inequitable results.

*Welch I,* 923 F.2d at 993. Only satisfaction of the first factor is mandatory—"[i]f the proponent of nonretroactivity clears the first hurdle, the court then proceeds to the 'balancing process demanded by the second and third factors.'" 923 F.2d at 994 (quoting *Kremer v. Chemical Construction Corp.,* 623 F.2d 786, 789 (2d Cir.1980), *aff'd on other grounds,* 456 U.S. 461, 102 S.Ct. 1883, 72 L.Ed.2d 262 (1982)).

Analyzing the case before it under the *Chevron* test, the *Welch I* Court found that (1) *Ceres* overruled well-established precedent, and so was not foreseeable; (2) retroactive application of a new and shorter limitations period would not further the purposes behind the rule; and (3) the equities favored plaintiffs and argued against retroactive application of *Ceres.* Defendants nonetheless argue that application of the *Chevron* test in the instant action requires retroactive application of *Ceres* to plaintiffs' claims. The Court cannot agree.

The Court finds the reasoning of the Second Circuit in *Welch I* to be dispositive of the issues presented. Examining the first *Chevron* factor, the Court of Appeals stated:

> *Ceres,* which overrules well-established precedent, meets the threshold requirement for nonretroactive application. Adoption of a uniform federal limitations period changes the practice in this Circuit, which was clear at the time the alleged fraud was discovered, of looking to the law of the forum state for an appropriate statute of limitations for 10b–5 claims.

*Welch I,* 923 F.2d at 994. Although the Third and Seventh Circuits had adopted the uniform federal limitations period prior to the time plaintiffs commenced this suit, this Court agrees with the Second Circuit that "the impending revision of a limitations period for 10b–5 claims was not so clearly foreshadowed that plaintiffs were chargeable with its prediction." *Id.*

With respect to the second factor in *Chevron,* the *Welch I* Court noted that as with all periods of repose, the new rule is intended to give notice "to potential plaintiffs of the time within which suit must commence and to potential defendants of the time beyond which exposure to liability

ceases." 923 F.2d at 995. Such interests would not be furthered by application of a new and shorter limitations period, where, as here, the rule is announced after expiration of that period. Accordingly, this Court concludes that the Second *Chevron* factor favors only prospective application of the one-year/three-year limitations period.

Finally, this Court believes that the equities in the instant case favor plaintiffs— "retroactive application would not prompt a past plaintiff into timely filing after the fact, and could constitute an unjust penalty for rightful reliance on existing law." *Gutman v. Equidyne Extractive Indus.,* 769 F.Supp. 121, 125 (S.D.N.Y.1991). While some judges in this District have found that it would be equitable to apply the one-year/three-year rule retroactively, such cases are not binding on this Court and, in any event, are distinguishable. *See, e.g., Varnberg v. Minnick,* 760 F.Supp. 315, 316 (S.D.N.Y.1991) (*Ceres* applied retroactively where complaint was filed more than two years after discovery of the alleged fraud and there was nothing in the record to suggest that plaintiffs had delayed filing in reliance on New York's six-year/two-year rule); *Block v. First Blood Assocs.,* 763 F.Supp. 746, 752 (S.D.N.Y.

1991) (*Ceres* applied retroactively where investors' claims were untimely even under the pre-*Ceres* rule). Moreover, it is clear that the vast majority of judges in this Circuit have followed *Welch I* and found retroactive application to be inequitable. *See, e.g., Department of Economic Development v. Arthur Andersen & Co.,* 85 Civ. 1292, 1992 WL 77542 at *2 1992 U.S.Dist.Lexis 4586, at *9 (S.D.N.Y. April 7, 1992) (finding retroactive application of *Ceres* inequitable on a motion to reinstate under Section 27A); *Alfadda v. Fenn,* 89 Civ. 6217, 1992 WL 44369, 1992 U.S.Dist.Lexis 1958 (S.D.N.Y. Feb. 21, 1992) (refusing to apply *Ceres* retroactively where no showing that plaintiffs did not rely on existing law). *Ceres* was decided almost a year after plaintiffs brought suit, and retroactive application of the rule it announced "would unjustly deny plaintiffs' 'right to a day in court.'" *Welch I,* 923 F.2d at 995 (quoting *Chevron,* 404 U.S. at 108, 92 S.Ct. at 356).[6]

Accordingly, the Court concludes that *Welch I* does not apply retroactively to plaintiffs' claims and that the limitations periods applicable to the Section 10(b) claims herein are to be determined by reference to pre-*Ceres* law.[7]

---

6. Relying upon case law in the Third and Seventh Circuits, *see Short v. Belleville Shoe Mfg. Co.,* 908 F.2d 1385, 1390 (7th Cir.1990), *cert. denied,* — U.S. ——, 111 S.Ct. 2887, 115 L.Ed.2d 1052 (1991); *Gatto v. Meridian Medical Assocs., Inc.,* 882 F.2d 840 (3d Cir.1989), *cert. denied,* 493 U.S. 1080, 110 S.Ct. 1136, 107 L.Ed.2d 1041 (1990), defendants take the position that since plaintiffs allegedly were not aware of their potential claim until after the three-year absolute bar period of *Ceres* had passed, they cannot argue that they delayed suit in reliance upon a longer state law limitations period. Thus, defendants submit, it follows that plaintiffs cannot argue that retroactive application of *Ceres* to their claims would produce inequitable results. This analysis, while followed by other Circuits, does not mandate a conclusion by this Court that retroactive application of *Ceres* to plaintiffs' claims would not produce inequitable results. The Second Circuit in *Welch I* did not endorse any one particular factual circumstance as requiring a finding that the equities favor retroactive application of *Ceres.* Furthermore, in *Henley v. Slone,* 961 F.2d 23, 26 (2d Cir.1992), the Court of Appeals indicated that it envisions *Ceres* to be retroactively applied only sparingly.

7. Nor can the Court agree with defendants' position that *Lampf* and *Beam* are the laws which were applicable on June 19, 1991. In rejecting the same argument made here by defendants, that the Supreme Court merely found the law as it existed, the court in *Ayers v. Sutliffe,* 1992 WL 100132, at *1 1992 U.S.Dist.Lexis 3219, at *2 (S.D.Ohio Feb. 11, 1992), stated:

*Lampf* and *Beam* clearly effected a change in the existing law. *Lampf* established a new one-year/three-year period of limitations for federal securities fraud claims, which unquestionably altered the governing law in this and many other jurisdictions, and *Beam* mandated retroactive application of the new law. In addition, [Section 27A] obviously precludes this court from applying a *Chevron* analysis in order to determine whether *Lampf* should be applied retroactively to this case. The unequivocal language of [Section 27A] mandates that the court not apply *Lampf* to plaintiffs' claims, irrespective of the result a *Chevron* analysis might yield.

*See also Venturtech II v. Deloitte Haskins & Sells,* 790 F.Supp. 574 (E.D.N.C.1992) (rejecting defendant's argument that pre-*Lampf* law was the same as *Lampf* because courts "find the law, not make it").

## B. Constitutionality of Section 27A

As an initial matter, this Court notes that it is not to decide constitutional questions unnecessarily. *See Jean v. Nelson,* 472 U.S. 846, 854, 105 S.Ct. 2992, 2997, 86 L.Ed.2d 664 (1985) (" 'Prior to reaching any constitutional questions, federal courts must consider nonconstitutional grounds for decision.' " (citations omitted)); *Spector Motor Service v. McLaughlin,* 323 U.S. 101, 105, 65 S.Ct. 152, 154, 89 L.Ed. 101 (1944) ("If there is one doctrine more deeply rooted than any other in the process of constitutional adjudication, it is that we ought not to pass on questions of constitutionality ... unless such adjudication is unavoidable."). While ordinarily this Court would analyze the timeliness of plaintiffs' Section 10(b) claims under pre-*Ceres* law in an effort to determine whether such claims would have been untimely in any event, such an inquiry would involve the Court in an analysis of the limitations laws of at least ten jurisdictions. The parties have not briefed what each of these laws is, and the Court assumes for the purposes of this motion that the claim of at least one of the plaintiffs would survive as timely under pre-*Ceres* law. Accordingly, the Court concludes that consideration of the constitutionality of Section 27A is unavoidable.

The Court must construe Section 27A in a manner which renders it constitutional if fairly possible. *Communications Workers of America v. Beck,* 487 U.S. 735, 762, 108 S.Ct. 2641, 2657, 101 L.Ed.2d 634 (1988); *Edward J. DeBartolo Corp. v. Florida Gulf Coast Bldg. & Constr. Trades Council,* 485 U.S. 568, 575, 108 S.Ct. 1392, 1397, 99 L.Ed.2d 645 (1988). When reviewing constitutional challenges to such statutes, however, courts may not press statutory construction " 'to the point of disingenuous evasion.' " *United States v. Locke,* 471 U.S. 84, 96, 105 S.Ct. 1785, 1793, 85 L.Ed.2d 64 (1985) (citations omitted).

■ Defendants argue that Section 27A violates the separation of powers doctrine. Article III of the Constitution vests judicial power in the courts and Article I vests legislative power in the Congress. However, the Supreme Court "has never held that the Constitution requires that the three branches of Government 'operate with absolute independence.' " *Morrison v. Olson,* 487 U.S. 654, 693–94, 108 S.Ct. 2597, 2620–21, 101 L.Ed.2d 569 (1988) (quoting *United States v. Nixon,* 418 U.S. 683, 707, 94 S.Ct. 3090, 3107, 41 L.Ed.2d 1039 (1974)). "Instead, courts are to employ a 'flexible understanding of separation of powers.' " *United States v. Huerta,* 878 F.2d 89, 91 (2d Cir.1989), *cert. denied,* 493 U.S. 1046, 110 S.Ct. 845, 107 L.Ed.2d 839 (1990) (quoting *Mistretta v. United States,* 488 U.S. 361, 381, 109 S.Ct. 647, 659, 102 L.Ed.2d 714 (1989)).

A violation of the separation of powers doctrine occurs when Congress enacts legislation that prescribes a rule of decision to the judicial branch of the government in cases pending before it without changing the underlying substantive or procedural law. *United States v. Sioux Nation of Indians,* 448 U.S. 371, 398, 100 S.Ct. 2716, 2732, 65 L.Ed.2d 844 (1980); *United States v. Klein,* 80 U.S. (13 Wall.) 128, 20 L.Ed. 519 (1871). Defendants contend that, in enacting Section 27A, Congress has contravened the constitutional principles established by *Klein* and its progeny. Section 27A, however, does not direct courts to make a specific factual finding or to apply a rule of decision to cases before it. *Accord Axel Johnson, Inc. v. Arthur Andersen & Co.,* 790 F.Supp. 476, 479 (S.D.N.Y. 1992) (Lasker, J.) ("Simply put, § 27A changes the law governing time bars of § 10(b) cases filed on or before June 19, 1991. Section 27A exhibits the central characteristic of legislation, as opposed to adjudication."); *TBG, Inc. v. Bendis,* Civ. 89–2423–0, 1992 WL 80622 (D.Kansas March 5, 1992) (Section 27A does not violate the doctrine of the separation of powers because it changes the law and does not " 'prescribe a rule for a decision of a cause in a certain way....' "); *Ayers v. Sutliffe,* 1992 WL 100132, 1992 U.S.Dist.Lexis 3219 (S.D.Ohio Feb. 11, 1992) ("By enacting § 476 [amending § 27A] Congress has not 'prescribed a rule for the decision of a cause in a particular way.' "); *Bankard v. First Carolina Communications, Inc.,*

1992 WL 3694, at *5 (N.D.Ill. Jan. 6, 1992) (By enacting Section 27A, Congress has not directed "the courts to make a particular factual finding or to reach a particular decision on the merits of any securities fraud claim.").

The Supreme Court's recent decision in *Robertson v. Seattle Audubon Society,* —— U.S. ——, 112 S.Ct. 1407, 118 L.Ed.2d 73 (1992), lends further support to this view. In *Robertson,* the Supreme Court reversed the Ninth Circuit, which had held that the statute in question violated the separation of powers doctrine because it directed results in certain cases without changing the underlying law. The statute in *Robertson* explicitly referred to two pending cases and affected the outcome of those cases. The Supreme Court, however, found that since the new law did not "direct any particular findings of fact or applications of law, old or new, to fact," it was not unconstitutional. *Id.* at ——, 112 S.Ct. at 1408. Under *Robertson,* therefore, a law will not be found to be unconstitutional, even where it may effect the outcome of a case, unless it directs particular findings.

Section 27A does not direct particular findings. As to actions that fall under its purview, Section 27A merely turns back the legal clock to the period just prior to *Lampf* and then permits courts independently to adjudicate any reopened actions on the basis of the law as they determine it then existed. As Judge Lasker noted in *Axel Johnson, Inc.:*

> [Section 27A] does not refer to this or any other case by name, nor does it dictate specific findings of fact or conclusions of law in any case. Plaintiffs in each case within the scope of § 27A must demonstrate that their case was timely filed under the law of the jurisdiction in which the case was brought as it existed on June 19, 1991, and the court in each such case is free to determine whether or not the plaintiff has made the required showing. Notably absent from § 27A, unlike the statute held unconstitutional

in *Klein,* is a specific directive as to what evidence a court may consider in determining the timeliness of the suit's filing or the case's merits.

790 F.Supp. at 479.

Moreover, Section 27A represents a change in the law. Prior to the enactment of Section 27A, all Section 10(b) claims were subject to the one-year/three-year limitations period, applied retroactively pursuant to *Beam.* Section 27A changed the law by limiting the one-year/three-year rule to prospective application only and by subjecting Section 10(b) claims filed prior to June 19, 1991 to the limitations period determined to be applicable by the court in which the action was filed. *See Bankard,* 1992 WL 3694, at *5 (It might seem that Section 27A did not effect a change in the law "only because instead of delineating fully the change of law, Congress has made the change by reference, incorporating the prevailing law in the applicable jurisdiction.").[8]

■ The Harmon defendants also challenge the constitutionality of the new statute on the ground that Section 27A mandates the practice of "selective prospectivity," whereby a court applies a new rule in the case in which it is pronounced, but returns to the old one with respect to all others arising on facts predating the pronouncement, which defendants contend was held by the Supreme Court in *Beam* to be constitutionally proscribed. This Court, however, does not read *Beam* as disapproving of the selective prospectivity principle on constitutional grounds.

Only three Justices out of nine found a constitutional basis for the Court's conclusion that selective prospectivity of judicial decisions was impermissible—Justices Blackmun, Marshall and Scalia found that retroactive application of judicial decisions is required by Article III of the Constitution. 111 S.Ct. 2439, 2450–51. Justice Souter, writing for the Court and joined by

---

**8.** Several district courts in other jurisdictions have found Section 27A unconstitutional on the grounds that it violates the separation of powers doctrine. *See, e.g., In re Brichard Securities* *Litigation,* 788 F.Supp. 1098 (N.D.Cal.1992); *Bank of Denver v. Southeastern Capital Group, Inc.,* 789 F.Supp. 1092 (1992).

Justice Stevens, stated that "selective prospectivity ... breaches the principle that litigants in similar situations should be treated the same, a fundamental component of *stare decisis* and the rule of law generally." 111 S.Ct. at 2444. Justice Souter viewed the retroactivity issue very narrowly, as "an issue of choice of law" and refused to "speculate as to the bounds or propriety of pure prospectivity." [9] *Id.* at 2448. Justice White, in his concurring opinion, agreed with the "narrower ground employed by Justice Souter," rejecting the constitutionality argument made by Justice Scalia. *Id.* at 2449. The three dissenting Justices totally rejected Justice Scalia's constitutional interpretation of retroactivity in favor of utilizing the *Chevron Oil* analysis. *Id.* at 2453–56. Accordingly, since *Beam* did not declare unconstitutional the practice of "selective prospectivity," this Court cannot conclude that Congress impermissibly revived that practice in enacting Section 27A.

■ Defendants' argument that Section 27A unconstitutionally divests defendants of the benefit of dismissal is equally flawed. In support of their contention, defendants cite, *inter alia, McCullough v. Virginia,* 172 U.S. 102, 19 S.Ct. 134, 43 L.Ed. 382 (1898); *Daylo v. Administrator of Veterans' Affairs,* 501 F.2d 811 (D.C.Cir. 1974); and *Georgia Association of Retarded Citizens v. McDaniel,* 855 F.2d 805 (11th Cir.1988). But defendants' reliance on these cases is misplaced. Rather than involving the modification of a technical defense, the cases cited by defendants specifically involved divestiture of a substan-

tive right, such as the right to receive a monetary award. *See Daylo,* 501 F.2d at 814–15 (denying motion of Veterans' Administration for relief, in light of newly enacted statute, from a judgment requiring payment of widows' benefits).

While it is true that "[i]t is not within the power of the legislature to take away rights which have been once vested by judgment," *McCullough,* 172 U.S. at 123, 19 S.Ct. at 142, this rule does not apply where the judgment was not based upon the merits of the claim, but instead was the result of the application of the defense of statute of limitations, a mere technical rule. Federal courts have long held that unless the passage of the statute of limitations creates a prescriptive property right, such as title in adverse possession, Congress is free to revive a cause of action after the limitations period has expired. *See Campbell v. Holt,* 115 U.S. 620, 6 S.Ct. 209, 29 L.Ed. 483 (1885). In *Chase Securities Corp. v. Donaldson,* 325 U.S. 304, 311–12, 65 S.Ct. 1137, 1140–42, 89 L.Ed. 1628 (1945), the Supreme Court reaffirmed the vitality of *Campbell* and found that revival of a personal civil cause of action which did not involve the creation of title did not offend notions of due process inherent in the Fourteenth Amendment.

The Supreme Court has noted that the timeliness defense has never been considered a " 'fundamental' right ... [and] the history of pleas of limitation shows [statutes of limitation] to be good only by legislative grace and to be subject to a

**9.** This Court does not agree with the analysis of the District Court in *TGX Corp. v. Simmons,* 786 F.Supp. 587 (E.D.La.1992), which found that Section 27A was unconstitutional since it "effect[s] the selective prospectivity constitutionally proscribed in *Beam.*" Notwithstanding Justice Souter's pronouncement that the grounds for the Court's decision were confined entirely to an issue of choice of law, the District Court of Louisiana was persuaded that the Supreme Court's rejection of selective prospectivity was rooted in Article III of the Constitution since the Court specifically referenced *Griffith v. Kentucky,* 479 U.S. 314, 107 S.Ct. 708, 93 L.Ed.2d 649 (1987), a case in which the Supreme Court abandoned the possibility of selective prospectivity in the criminal context. Justice Sout-

er's reliance on *Griffith,* however, does not support the *TGX* court's conclusion that retroactivity is constitutionally mandated. *Griffith* held that in criminal cases a new rule must be applied retroactively on two grounds: the integrity of judicial review under Article III, and the principle of equality. *Griffith,* 479 U.S. at 322–23, 107 S.Ct. at 712–13. Justice Souter in *Beam* found *Griffith* to apply to civil cases on the principles of stare decisis and equality, not on the basis of judicial integrity under Article III, as the Louisiana court would have it. *See Beam,* 111 S.Ct. at 2446 ("*Griffith* cannot be confined to the criminal law. Its equality principle, that similarly situated litigants should be treated the same, carries comparable force in the civil context.").

relatively large degree of legislative control." *Chase Securities*, 325 U.S. at 314, 65 S.Ct. at 1142. Moreover, statutes of limitation "are by definition arbitrary, and their operation does not discriminate between the just and the unjust, or the voidable and unavoidable delay." *Id.* "Legislation to alter such a technical defense, and its application even to dismissed cases, goes far less to the heart of the judicial function than would a legislative attempt to reverse adjudications which had addressed the true merits of the disputes in question." *Axel Johnson, Inc.*, 790 F.Supp. at 483.

Although the Supreme Court's decision in *Lampf* may have given defendants an opportunity to avoid litigating the Section 10(b) claims, the reinstatement of those claims, pursuant to an Act passed by Congress a mere six months later, creates no special hardship or unfair surprise. *See Venturtech II, supra.*[10]

### CONCLUSION

For the foregoing reasons, plaintiffs' motion to reinstate the Section 10(b) claims is granted.

SO ORDERED.

---

**10.** The Court further notes that Rule 60(b)(6), Fed.R.Civ.P., permits a court to relieve a party from final judgment where there is a post-judgment change in the law having retroactive application. *See Matarese v. LeFevre,* 801 F.2d 98, 106 (2d Cir.1986), *cert. denied,* 480 U.S. 908, 107 S.Ct. 1353, 94 L.Ed.2d 523 (1987). Because Section 27A provides for a retroactive change in the law, this action may also be reinstated under Rule 60(b)(6). *Accord Axel Johnson, Inc.,* 790

F.Supp. at 482 ("[T]he seeming finality of the judgment is rendered less certain by the short time that passed between its execution and passage of § 27A, particularly in light of ... Rule 60(b) .... [H]ere the motion was plainly brought within the 'reasonable time' contemplated by the Rule, particularly in light of the provision that relief could be granted up to a year after the initial dismissal for nonapplicable specified reasons.").