Alice LAWRENCE, Suzanne Lawrence, Richard Lawrence, and Marta Jo Lawrence, individually, and on behalf of the Estate of Sylvan Lawrence, including the Residuary Trust, Plaintiffs,

v.

Seymour COHN, Defendant.

No. 90 Civ. 2396 (CSH).

United States District Court, S.D. New York.

Feb. 25, 1993.

Graubard, Mollen, Horowitz, Pomeranz & Shapiro, New York City, for plaintiffs; Steven Mallis, of counsel.

Shea & Gould, New York City, for defendant Cohn; Milton S. Gould, of counsel.

## MEMORANDUM OPINION AND ORDER

HAIGHT, District Judge:

This case is before the Court on plaintiffs' motion under Rule 60(b), Fed.R.Civ.P., to vacate the Court's order of November 12, 1991, dismissing plaintiffs' federal securities claim on statute of limitations grounds and dismissing their other claims without prejudice.

Plaintiffs are beneficiaries under the will of the late Sylvan Lawrence, who died in December, 1981. The defendant, Seymour Cohn, Lawrence's brother, is the sole executor of the Lawrence estate (the "Estate") and a trustee of a residuary trust created by the will.

Plaintiffs allege that Cohn committed various acts of fraud and breached his fiduciary duty in connection with his duties as trustee of the Estate. These parties have been litigating the matter in the Surrogate's Court (Hon. Renee R. Roth) since 1983.

In 1990, plaintiffs filed this federal action. The amended complaint charges Cohn with violations of § 10(b) of the Securities and Exchange Act of 1934, 15 U.S.C. § 78j(b), and Rule 10b–5 promulgated thereunder, 17 C.F.R. § 240.10b–5; and with violations of the RICO statute, 18 U.S.C. §§ 1962(a)(b) and (c). Plaintiffs also allege pendent state claims for common law fraud, breach of contract, and unjust enrichment.

They seek imposition of a constructive trust on certain partnership interests acquired by defendant; a conveyance of those interests to the plaintiffs and/or the Estate; an accounting; compensatory damages (trebled under RICO); punitive damages; attorneys fees; and costs.

Defendant moved to dismiss the amended complaint on a number of grounds. By order dated November 12, 1991, the Court dismissed the 10b–5 claim as untimely under the statute of limitations, and declined to assert jurisdiction over the remaining claims, including the RICO claim, as they were being fully litigated in the state court. The Clerk of the Court entered an order of Judgment dismissing the case on November 25, 1991.

Plaintiffs noticed their appeal to the Second Circuit on December 12, 1991. A subsequent Order to Show Cause for Vacatur of Judgment and Order pursuant to Rule 60(b) was declined by this Court on January 8, 1992, as this Court was divested of jurisdiction upon the filing of the notice of appeal.

Upon the advice of staff counsel to the Second Circuit, plaintiffs wrote this Court on January 14, 1991, asking whether this Court would consider plaintiffs' Rule 60(b) motion if the Second Circuit were to remand the case for that purpose. By memorandum opinion and order dated January 24, 1992, this Court responded to plaintiffs' request: "Without expressing any view on the merits of such a motion, I am prepared to state, and do hereby state, that I would be willing to consider such a motion if the case is remanded."

By order dated February 4, 1992, the Second Circuit remanded the case to this Court for disposition of the Rule 60(b) motion. All other appellate proceedings were stayed pending the disposition of that motion.

## BACKGROUND

The facts of the case are set forth more fully in the Court's November 12, 1991 opinion, 778 F.Supp. 678, familiarity with which is assumed. For the purposes of this motion, allegations in plaintiffs' amended complaint are taken as true.

Prior to his death, Lawrence and defendant Cohn were the sole general partners of a limited partnership known as Ninety–Five Wall Street Company (the "Limited Partnership"). The Limited Partnership's principal asset was an office building located at 95 Wall Street. Lawrence and Cohn owned a 60% interest as general partners; the other 40% was held by a number of individuals as limited partners.

The Limited Partnership agreement provided that upon the death, retirement, or incompetency of one of the general partners (Lawrence or Cohn), the partnership would continue, with the remaining partner as the sole general partner with a 30% interest. The retired, deceased or incompetent partner (or his legal representatives) would become a limited partner with a 30% interest. Limited Partnership Agreement, ¶ 9. Accordingly, upon Lawrence's death, his interest as a general partner was automatically converted into a 30% limited partnership in favor of his Estate; Cohn became the sole general partner.

The Limited Partnership agreement further provided that in the event one of the limited partners wished to sell his interest, the other limited partners had the right of first refusal. (If more than one limited partner wished to partake in the purchase, they would do so in proportion to their respective interests.) If the limited partners did not wish to purchase the interest, the General Partners had the next right of refusal. Limited Partnership Agreement ¶ 8(b).

On May 23, 1983, defendant Cohn executed an agreement with the limited partners (exclusive of Lawrence's Estate) for the purchase of their partnership interests, which accounted for a 40% interest. On August 18, 1983, Cohn commenced a proceeding in the Surrogate's Court seeking that court's advice and direction (the "Advice and Direction Proceeding") regarding who, as between him and the Estate, should own the 40% limited partnership interests acquired in his buy-out of the limited partners. In connection with that proceeding, on January 6, 1984, Cohn submitted an affidavit outlining his opinion of the value of the limited partnership interests, and the wisdom of the Estate purchasing all or part of the interests up for sale.

On or about May 17, 1984, Cohn and the plaintiffs completed the signing of a settlement agreement providing for the disposition of the 40% limited partnership interest; one-half would be acquired by the Estate and one-half would be acquired by Cohn individually. This agreement was approved by the Surrogate on or about May 18, 1984.

Plaintiffs essentially allege that prior to the May 1984 agreement, Cohn fraudulently concealed from them the true facts regarding the status of negotiations with lessees of space at 95 Wall Street. The effect of those fraudulent omissions was to make the building appear less valuable than it was. Plaintiffs alleged that had Cohn timely informed them of the true facts,

plaintiffs would not have signed the Purchase and Sale Agreement—in which the Estate relinquished and conveyed to [Cohn] individually a portion of its right to purchase the entire 40 percent limited partnership interests acquired pursuant to the Limited Partners Buy–Out Agreement—and would instead have caused the Estate to purchase the entire amount of such interest. Complaint at ¶ 92.

Additionally, plaintiffs allege other wrongdoing on the part of Cohn beginning soon after Lawrence's death. They allege that Cohn seeks to retain control of the Estate so that he may continue to pillage it.

Needless to say, these issues have been the subject of litigation in the Surrogate's Court for almost a decade.

The November 12, 1991 opinion of this Court granted defendant's motion to dismiss, finding that plaintiffs' federal securities claims were time-barred in light of the recent Supreme Court decision in *Lampf, Pleva, Lipkind, Prupis & Petigrow v. Gilbertson*, —— U.S. ——, 111 S.Ct. 2773, 115 L.Ed.2d 321 (1991), which held that § 10(b) and Rule 10b–5 claims are governed by a uniform federal limitations period. *Lampf* required that suit be brought within one year after discovery of the facts constituting the violation and within three years after the violation. The parties agree that the application of a one

year/three year rule would bar plaintiffs § 10(b) claims.

The issue now pending before this Court is whether subsequent developments in the law make it appropriate to vacate the Court's November 12th order. That decision depends on what statute of limitations governs plaintiffs' § 10(b) claims.

## DISCUSSION

Section 10(b) of the 1934 Act does not provide an explicit statute of limitations. At the time plaintiffs commenced this lawsuit on April 9, 1990, most courts in this Circuit adhered to the principle that the statute of limitations should be "borrowed" from the most analogous state statute; here, that mandated application of New York's "two year/six year" statute of limitations for fraud actions.[1]

On December 8, 1990, the Second Circuit handed down its decision in *Ceres Partners v. GEL Associates,* 918 F.2d 349 (2d Cir.1990) ("*Ceres*"), which held that § 10(b) claims would be subject to a one year/three year statute of limitations, as was the practice in some other circuits. *See In re Data Access Sys. Sec. Litig.,* 843 F.2d 1537 (3d Cir.1988). The Second Circuit, however, declined to decide whether this ruling would apply to cases pending at the time of decision, or only those filed subsequently.

That question was not answered until 1991 when the Circuit issued its decision in *Welch v. Cadre Capital,* 923 F.2d 989 (2d Cir.1991) ("*Welch I* "). Applying the factors set forth in *Chevron Oil Co. v. Huson,* 404 U.S. 97, 92 S.Ct. 349, 30 L.Ed.2d 296 (1971) ("*Chevron*"), which are used to determine the retroactivity of a new rule, the Court in *Welch I* made it clear that the new one year/three year statute of limitations would apply only prospectively, to cases filed after November 8, 1990, the date the *Ceres* decision was handed down.

*Welch I* was the law in the Second Circuit until June 20, 1991, when the Supreme Court announced decisions in *Lampf* and *James B. Beam Distilling Co. v. Georgia,* —— U.S. ——, 111 S.Ct. 2439, 115 L.Ed.2d 481 (1991) ("*Jim Beam*"). In *Lampf,* 111 S.Ct. at 2773, the Supreme Court adopted the one year/three year statute of limitations for all actions brought pursuant to § 10(b) of the 1934 Act and Rule 10b-5. In *Jim Beam,* the Court held that once a ruling in a civil case is applied in the case in which it is announced, it must be applied retroactively to all cases pending on review. Significantly, the Supreme Court applied the new *Lampf* rule to the case before it, meaning that under *Jim Beam,* the rule would also apply retroactively to all cases pending on direct review.

Thereafter, the Supreme Court vacated and remanded *Welch I* for reconsideration of the retroactivity issue in light of the holdings of *Lampf* and *Jim Beam. See Northwest Savings Bank, PaSA v. Welch,* —— U.S. ——, 111 S.Ct. 2882, 115 L.Ed.2d 1048 (1991). In *Welch v. Cadre Capital,* 946 F.2d 185 (2d Cir.1991) ("*Welch II* "), the Second Circuit reversed its earlier position in light of the recent Supreme Court decisions, and held that the new one year/three year statute of limitations would apply retroactively to all cases regardless of when they were filed.

*Welch II* was the state of the law in the Second Circuit until December 19, 1991, when Congress enacted the Federal Deposit Insurance Corporation Improvement Act of 1991 (codified at Securities and Exchange Act of 1934, § 27A, 15 U.S.C. § 78aa–1), ("Section 27A"), which was intended to ameliorate the harsh impact of *Lampf* and *Jim Beam.* Section 27A provides:

(a) EFFECT ON PENDING CAUSES OF ACTION—The limitation period for any private civil action implied under Section 10(b) of this Act that was commenced on or before June 19, 1991, shall be the limitation period provided by the laws application in the jurisdiction, in-

---

1. New York C.P.L.R. §§ 213(9) and 203(f) require that an action for fraud be brought within six years of the commission of the fraud, or within two years of the discovery of the fraud, whichever period is longer. *See Triangle Underwriters, Inc. v. Honeywell, Inc.,* 604 F.2d 737, 746 (2d Cir.1979). Defendant disputes whether this action would be timely even under the application of a two year/six year rule. I decline to consider that issue on the present inadequate record.

cluding principles of retroactivity, as such laws existed on June 19, 1991.[2]

(b) EFFECT OF DISMISSED CAUSES OF ACTION—Any private civil action implied under Section 10(b) of this Act that was commenced on or before June 19, 1991—

(1) which was dismissed as time-barred subsequent to June 19, 1991, and

(2) which would have been timely filed under the limitation period provided by the laws applicable in the jurisdiction, including principles of retroactivity, as such laws existed on June 19, 1991,

shall be reinstated on motion by the plaintiff not later than 60 days after the date of the enactment of this section.

Plaintiffs claim that the order dismissing their complaint should be vacated under Section 27A. They assert, and it appears undisputed, that they have fulfilled the procedural requirements (filing a motion within 60 days of the date of enactment), and are thus entitled to an order vacating the dismissal.

Defendant opposes plaintiffs' motion on three grounds. He argues that (1) application of § 27A does not reinstate plaintiffs' claim; (2) § 27A is unconstitutional; and (3) even if the court reinstates plaintiffs' § 10(b) claim, it should not reinstate the RICO and pendent state claims that were also dismissed. The Court will address each argument in turn.

## I. *Application of Section 27A*

 The language of Section 27A requires reinstatement of claims that were dismissed after June 19, 1991 as time-barred if they would have been timely filed under the law of the jurisdiction as it existed on June 19, 1991. There is no dispute that plaintiffs' § 10(b) claim was dismissed as time-barred after June 19: the issue in dispute concerns the state of the law in this circuit prior to June 19, 1991.

Defendant claims that the one year/three year rule set forth in *Lampf* and *Ceres* was the law of the Circuit in June 1991. *See*

Defendant's Memorandum in Opposition, at 21. Defendant reaches this position by reasoning that *Jim Beam* did not create new law, but merely characterized what the law actually was. As defendant asserts, the Supreme Court does not change laws, but articulates "laws" that already exist. Hence, when the Second Circuit came down with its decision in *Ceres,* the retroactivity issue was clear: the Court should have applied the decision retroactively, as the Supreme Court explained in *Jim Beam.* Since *Welch I* was wrongly decided, the way the law should have been in the Second Circuit in the period leading up to June 19, 1991 was a retroactive application of *Ceres.*

Defendant's position, however, has been rejected by the Second Circuit. In *Henley v. Slone,* 961 F.2d 23 (2d Cir.1992), it held that the law in effect prior to November 8, 1990, was the application of "the one year/three year rule of *Ceres* applied sparingly in light of the retroactivity principles enunciated in *Welch I.*" *Henley,* 961 F.2d at 26. Rather than automatically granting all § 10(b) plaintiffs the benefit of the state statute of limitations period that predated *Lampf, Henley* read Section 27A to require the individual application of the *Chevron* principles that informed the *Welch I* decision. *Id.*

> "*Chevron* recognized for civil actions a narrow exception to the general presumption favoring application of the law prevailing at the time of appeal. To qualify for purely prospective application, a decision must establish a new principle of law, either by overruling clear past precedent on which litigants may have relied, ... or by deciding an issue of first impression whose resolution was not clearly foreshadowed. A court should then 'weigh' in each case whether retroactive application would conflict with the purposes of the rule and whether it would produce inequitable results." *Welch I,* 923 F.2d at 993, citing and quoting *Chevron,* 404 U.S. at 106–07, 92 S.Ct. at 355 (citations omitted).

*Welch I* read *Chevron* to require satisfaction of the first factor (establishment of a new

---

**2.** June 19, 1991 is the day before the *Lampf* and *Jim Beam* decisions were handed down by the Supreme Court.

principle of law), which would allow the court to proceed to a balancing test employing the second and third factors. *Welch I*, 923 F.2d at 994. Thus, a determination of the appropriate statute of limitations requires an application of the *Chevron* factors to the case at bar.

*Chevron's* first factor is whether the decision "establishes a new principle of law, either by overruling clear past precedent on which litigants may have relied, ... or by deciding an issue of first impression whose resolution was not clearly foreshadowed." *Id.*, at 993. In *Welch I*, the Second Circuit held that *Ceres* met that first requirement, reasoning that the one year/three year rule was a distinctive change in practice in the Circuit. I am bound by that holding.

As to *Chevron's* second factor, whether the application of the new statute of limitations would further the purposes behind the rule, *Welch I* concluded that the "application of a shorter limitations period not yet in existence at the time the suit was commenced clearly does not further either of the competing interests [of deterrence and repose]." *Welch I*, 923 F.2d at 995. Applying a new rule to the case at bar could not change plaintiffs' behavior in any way. Moreover, it certainly would not impair the purposes in the 1934 Act to have a handful of cases (those still pending on July 19, 1991, but filed before November 8, 1990) continue with the longer limitations period. *Id.*

Balancing into the equation the third *Chevron* factor, whether the equities favor the application of the old rule, I think that plaintiffs' make a strong case for application of the old rule, since the new rule would bar their claim. Plaintiffs did not delay in any attempt to maneuver a procedural advantage. Nor has defendant alleged that the timing of plaintiffs' federal filing has prejudiced him in any way.

Accordingly, I conclude that taking into account the factors set forth in *Chevron*, the retroactive application of the *Ceres* rule is not required in these circumstances. Plaintiffs should have the benefit of the application of the pre-*Ceres* rule.

## II. *Constitutionality of Section 27A*

■ Defendant's second argument is that Section 27A is unconstitutional, as it violates the Separation of Powers Clause of Article III, the Supremacy Clause of Article VI, and the Equal Protection and Due Process Clauses of the Fifth Amendment.

The Second Circuit has not yet addressed this question. It has declined to do so until it is squarely presented with a case raising that issue. *Henley*, 961 F.2d at 26. The only indication of the Court of Appeals' sentiments is found in a footnote in *Litton Industries, Inc. v. Lehman Brothers Kuhn Loeb, Inc.*, 967 F.2d 742, 752, n. 6 (2d Cir.1992), where it noted that it was "unimpressed by the cogency" of analyses finding Section 27A unconstitutional.

The district courts in this circuit that have been confronted with the issue have unanimously found the statute constitutional. *See Adler v. Berg Harmon Associates*, 790 F.Supp. 1235 (S.D.N.Y.1992); *Brown v. Hutton Group*, 795 F.Supp. 1307 (S.D.N.Y.1992); *Axel Johnson, Inc. v. Arthur Andersen & Co.*, 790 F.Supp. 476 (S.D.N.Y.1992); *Kalmanson v. McLaughlin*, 1992 WL 190139 (S.D.N.Y.1992); *In re Crazy Eddie Securities Litigation*, 802 F.Supp. 804, 811 (E.D.N.Y.1992).

Although other district courts have reached a different conclusion as to constitutionality, *see In re Brichard Sec. Litigation*, 788 F.Supp. 1098 (N.D.Cal.1992); *Bank of Denver v. Southeastern Capital Group, Inc.*, 789 F.Supp. 1092 (D.Colo.1992), I am persuaded by the reasoning in *Axel Johnson, Inc. v. Arthur Andersen & Co.*, 790 F.Supp. 476, and *Adler v. Berg Harmon Assoc.*, 790 F.Supp. 1235, that Section 27A is constitutional as I have applied it.

## III. *Reinstatement of Plaintiffs' Claims*

Defendant argues that even if the Court finds that Section 27A constitutionally requires reinstatement of plaintiffs' § 10(b) claims, the Court should not reinstate plaintiffs' RICO and common law causes of action, which the court dismissed on November 12, 1991, on the grounds of abstention. He also contends that the § 10(b) claim is time-

barred even under the application of New York's "two year/six year" rule.

Defendant asks this Court to go beyond the purposes of the limited remand from the Second Circuit. The Second Circuit remanded this case solely so this Court could decide whether or not to vacate its November 12, 1991 order. I have concluded that plaintiffs' motion to vacate should be granted for the reasons set forth above. I will not consider any of defendant's other contentions until they are properly before this Court.

## ORDER

The Clerk of the Court is directed to vacate the Court's order of November 12, 1991. The parties are invited to attend a status conference on Friday, March 19, 1993 at 3:00 p.m. in Room 307 of the United States Courthouse. If any party wishes to make a further substantive motion, it will have the opportunity to do so after that conference.

It is SO ORDERED.